ST. LAWRENCE, The (TUPPER v.). See Case No. 14,240.

ST. LOUIS (CHAFFIN v.). See Cases Nos. 2,572 and 2,573.

ST. LOUIS (ILLINOIS & ST. L. RAILROAD & CANAL CO. v.). See Case No. 7,007.

———

## Case No. 12,235.

### ST. LOUIS v. JOHNSON.

[5 Dill. 241;[1] 9 Cent. Law J. 91.]

Circuit Court, E. D. Missouri. July 10, 1879.

BANK—DEPOSIT—RELATION BETWEEN BANKER AND CUSTOMER — DEBTOR AND CREDITOR— PRINCIPAL AND AGENT.

The ordinary relation between a banker and his customer, as respects money deposited by the latter with the former, is that of debtor and creditor; but, on the special circumstances of this case, the relation between the two, as respects a specific sum of money remitted by the banker at the request of the customer to another bank to pay a specified debt of the customer, was held to be that of principal and agent, or trustee and cestui que trust, and not that of debtor and creditor.

[Cited in Welles v. Stout, 38 Fed. 811.]

[Cited in Peak v. Ellicott, 30 Kan. 162, 1 Pac. 499.]

In equity. The city of St. Louis and the receiver of the National Bank of the State of Missouri respectively claim to be entitled to the sum of $29,564.29 currency, and $8,570.60 gold, on deposit June 20th, 1877, to the credit of the above named bank, in the Bank of the Republic, in New York. Briefly, the material facts, as shown by the proofs, are these: The National Bank of the State of Missouri suspended payment and closed its doors on June 19th, 1877, and the defendant, Johnson, is the receiver thereof, duly appointed, under the act of congress, by the comptroller of currency. From 1870, and until its suspension, the bank was the depository of

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

the money of the city of St. Louis. In 1872, the bank gave a bond, with security, to the city, in the sum of $500,000, conditioned that, "whereas, the bank has been selected by the city as the bank in which the money of the city shall be deposited; and, whereas, the bank has agreed to keep. subject to the lawful orders of the lawful officers of the city, such moneys or deposits as may be so deposited with said bank by said city or its lawful officers: now, if said bank shall well and faithfully keep and safely hold all such money of the city now deposited or hereafter to be deposited with it, and accurately account with said city therefor, and promptly respond to all proper and lawful demands and orders upon such deposits, then the obligation to be void; otherwise to remain in full force." The money of the city was deposited in the bank by the city treasurer, and was kept in a "general current account" (pass-book "H"), and was subject to be drawn out on checks signed by the city treasurer. In addition to the current account, two other special accounts were kept by the bank with the city —one was the "coupon account, gold" (pass-book "G"), and the other the "bond and coupon account, currency" (pass-book "E")— and the three accounts were represented by three pass-books held by the city, the entries in which were made by the officers of the bank. The bonds and coupons of the city fell due from time to time, and were payable in the city of New York, and it was necessary to provide funds there to meet them. A portion of the bonds and coupons of the city was payable at the Bank of the Republic, in New York, and the rest at the Bank of Commerce, in that city. To provide for the payment of such bonds and coupons, the practice was for the city treasurer, upon the instruction of the city comptroller, to draw a check on the National Bank of the State of Missouri for the amount necessary to be placed in New York to meet maturing bonds and coupons, and endorse the check and deliver it to the bank, with written instructions to remit the amount to the National Bank of Commerce, or the National Bank of the Republic, or both, in the city of New York, to pay bonds and coupons of the city of St. Louis falling due. Thereupon the National Bank of the State of Missouri would remit, or provide a credit for the amounts specified, to the Bank of the Republic, or the Bank of Commerce, or both, with written instructions to said banks to pay, and charge to the general account of the National Bank of the State of Missouri, the bonds and coupons of the city of St. Louis maturing at said banks, and forward the same cancelled to the National Bank of the State of Missouri.

The following amounts (out of which the balances here in question arose) were remitted to New York, in the manner and for the purpose aforesaid, and at the dates stated:

April 25th, 1877.

| | |
|---|---|
| To National Bank of the Republic | $ 51,000 00 |
| To National Bank of Commerce | 122,300 00 |
| Total | $173.300 00 |

May 25th. 1877.

| | |
|---|---|
| To National Bank of the Republic | $ 45.350 00 |
| To National Bank of Commerce | 189.800 00 |
| Total | $235,150 00 |

May 29th, 1877.

| | |
|---|---|
| To National Bank of the Republic | $162,000 00 |

The present suit only relates to the balance of the fund thus provided which remained in the Bank of the Republic at the date of the suspension of the Bank of the State of Missouri, and which had been transmitted to the Bank of the Republic. in the manner hereinafter stated, to pay the coupons of the city made payable at that bank.

To exhibit the matter clearly, the correspondence attending the transaction of April 25th, 1877, is given in full, as follows: It commenced with the following letter from the city comptroller to the city treasurer:

"Treasury Department, Comptroller's Office, St. Louis, April 25th, 1877. A. Geisel, Esq., City Treasurer: Sir:—You will please remit the following amounts to pay bonds and interest falling due, for which warrants have been this day drawn in your favor, namely:

To National Bank of Commerce, New York:

| | | |
|---|---|---|
| City sterling coupons, gold | $57,800 00 | |
| Proceeds and exchange | 5,000 00 | $ 62,800 00 |
| County interest coupons, gold | $15,000 00 | |
| Proceeds and exchange | 1,500 00 | 16,500 00 |
| City currency coupons | | 43,000 00 |
| | | $122,300 00 |

To National Bank of the Republic, New York:

| | | |
|---|---|---|
| City currency coupons | $11.000 00 | |
| City bonds | 40.000 00 | 51,000 00 |
| | | $173.300 00 |

"Very respectfully,

"Richard P. Hannenkamp, Comptroller."

Next in order is the letter of the city treasurer to the National Bank of the State of Missouri:

"City Treasurer's Office, St. Louis. Missouri, April 25th, 1877. To James H. Britton, Esq.. President of National Bank of the State of Missouri: Sir:—Enclosed I hand you a check for one hundred and seventy-three thousand, three hundred dollars ($173,300). which you will please have remitted to New York to pay bonds and coupons of the city and county of St. Louis falling due in May proximo:

To National Bank of Commerce, New York:
Sterling coupons, gold $57,800 00
Proceeds and ex-
change ......... 5,000 00
$ 62,800 00
County coupons, gold $15,000 00
Proceeds and ex-
change ......... 1,500 00
16,500 00
Currency coupons.. 43,000 00
To National Bank of the Republic,
New York:
Currency coupons ............. 11,000 00
City bonds ................... 40,000 00

$173,300 00.

"Yours respectfully,
"Edward Brooks, Asst. Treasurer."

The check enclosed in the foregoing letter was in the words and figures following:

"City Treasurer, St. Louis, Mo., April 25th, 1877. No. 903. To National Bank of the State of Missouri, in St. Louis: Pay to the order of George Kissel, teller, one hundred and seventy-three thousand, three hundred dollars ($173,300). A. Geisel, Treasurer."

Endorsed: "Pay to the order of National Bank of the State of Missouri. George Kissel, Teller."

Thereupon the National Bank of the State of Missouri wrote to the National Bank of the Republic the following letter:

"National Bank of the State of Missouri, in St. Louis, St. Louis, April 28th, 1877. To Cashier of the National Bank of the Republic, New York: Dear Sir:—I enclose herein for credit in account Commerce, $51,000. Please pay and charge to our general account the bonds and coupons of the city of St. Louis maturing at your bank next month, and forward the same to us, as usual, cancelled. Yours respectfully, Edward P. Curtis, Cashier."

The above transaction appears in the pass-books held by the city, as follows: In the pass-book containing the "general current account" (Exhibit H), the city is charged with the check for $173,300, and its general balance in bank, subject to check, is reduced by the amount named. In the pass-book containing the "bond and coupon account, currency" (Exhibit E), the bank charges itself with the amount of $173,300, and credits itself with the purchase of gold as instructed (that is, currency paid therefor), and bonds and coupons paid in currency and cancelled, and returned to the city, and exchanged on remittances, and commissions. In the pass-book containing the "coupon account, gold" (Exhibit G), the bank charges itself with the gold purchased, $72,800 (not the cost thereof), and credits itself with bonds and coupons paid in gold and cancelled, and returned to the city. The same course precisely was pursued in the transaction of $235,150 on May 25th, 1877, and of $162,000 on May 29th, 1877.

The money remitted by the National Bank of the State of Missouri to the National Bank of the Republic, in New York, as aforesaid, was deposited, with the knowledge and by the direction of the city, to the credit of the National Bank of the State of Missouri, and coupons and bonds of the city, when paid by the National Bank of the Republic, were charged to the National Bank of Missouri, with commissions, and were cancelled and returned by express to the bank here, and by the bank were delivered to the city treasurer, and thereupon the bank entered in pass-book "E," if such coupons and bonds were paid in currency, a credit to itself for the amount thereof, with exchange for itself and with commissions paid to the Bank of the Republic; or if they were paid in gold, a credit was taken by the bank in pass-book "G," for the face of the coupons and bonds so paid in gold, with exchange and commissions. The money remitted to New York to pay bonds and coupons of the city, as aforesaid, was deposited to the credit of the National Bank of the State of Missouri, and not to the credit of the city, in pursuance of an arrangement to that end, made in 1870, to prevent the money of the city being attached in New York at the suit of the holders of coupons of the city, who claimed that the same were payable in gold, and not in currency, because the bonds to which they were attached did not specify in what funds said bonds were payable. The books of the National Bank of the State of Missouri exhibit its transactions with the city in three accounts, corresponding respectively with the accounts stated in the pass-books above mentioned. The Bank of Commerce was the general correspondent of the Bank of the State of Missouri, and this suit does not relate to any balance in that bank. The Bank of the Republic was not the correspondent of the Bank of the State of Missouri, and the only transactions between these two banks are those relating to the payment for a series of years of the bonds and coupons of the city with funds remitted or provided for that purpose from time to time by the Missouri bank, in the manner hereinbefore shown. This suit involves only the balance of the fund thus provided remaining on hand in the Bank of the Republic when the Missouri bank suspended, June 19th, 1877. It should also be stated that in April or May, 1877, an arrangement was made between the city and the National Bank of the State of Missouri, whereby the latter agreed to pay four per cent interest per annum on the average daily balance of the city in excess of $100,000, and this arrangement was thenceforward carried out; but under it no interest was paid save on the average daily balance of the current account, and none on sums remitted to New York, after the bank received the check of the city treasurer therefor. The city paid the bank here exchange on the sums which it remitted to New York. The bank in New York charged a commission for paying the coupons to the bank here, which

was in turn charged to and paid by the city. When the Bank of Missouri closed its doors, there was to its credit at the Bank of the Republic, in New York, $29,564.29 in currency, and $8,570.60 in gold, being balances of funds remitted to said bank under the orders of the city treasurer in the manner aforesaid.

This notice was served on the National Bank of the Republic:

"New York, June 30th, 1877. H. W. Ford, Esq., Cashier of National Bank of the Republic: The city of St. Louis claims that the balance standing to the credit of the National Bank of the State of Missouri, on the books of your institution, is the property of the city of St. Louis. Henry Overstolz, Mayor."

The National Bank of the Republic made no claim to the funds, and, by stipulation of parties, they were withdrawn from New York, and are on deposit in the sub-treasury at St. Louis, to abide the determination of this case; and the question here to be settled is, which party has the preferable right to the money—the city of St. Louis, or the receiver of the National Bank of the State of Missouri?

Leverett Bell and James E. Withrow, for plaintiff.

Henderson & Shields, for defendant.

DILLON, Circuit Judge. The receiver succeeds to all the rights of the National Bank of the State of Missouri; and, as there is no question of fraud, actual or constructive, in the case, he succeeds only to the rights of the bank as against the city to the balance on hand in the Bank of the Republic at the date of the failure of the Missouri bank.

As between the Missouri bank and the city, did those moneys in the Bank of the Republic belong to the city? Suppose the Missouri bank had not failed, and a contest had arisen between it and the city as to the balance on hand in the Bank of the Republic, would the city have been entitled to a judgment or decree that this balance was in law or in equity its money? If so, the same rights still remain. If, however, as respects this balance, the Missouri bank sustained towards the city the relation of a debtor only, this relation still remains, and the receiver is entitled to the fund, and the city must come in as a general creditor.

Suppose the Bank of the Republic had failed with the amount here in dispute on hand; on which would the loss have fallen, the city or the Missouri bank? Such an inquiry would involve the same principle which is presented in the cause now under consideration. The correct decision of the cause requires that the facts and circumstances which give it its peculiar character shall be closely regarded, and the intention and purposes of the bank and of the city kept constantly in view.

The general relation of the bank to the city was the usual relation of a banker to his customer, viz., the relation of debtor and creditor. That was the undoubted relation as to the account in the general pass-book "H." On the face of the special pass-books, "E," and "G," the same relation also exists, for the bank credits the city and charges itself with the amount received or transferred from the general account, and when it subsequently receives the coupons and surrenders them to the city, and not before. it charges the city on these books (and on its books, of which these are copies) with the amount of coupons surrendered, and with exchange on the sum remitted to New York, and also the commissions for services charged by the Bank of the Republic. It did not charge the city on the special books with the amount remitted to New York at the date of remittance, but, as just stated, only debited the city when the coupons were received here and surrendered to the city.

As between the bank here and the Bank of the Republic, the money was that of the Bank of Missouri, and not that of the city. It was intended to be so as between all three of the parties. Originally the city had a purpose in not having it appear that the money in New York to pay its obligations was its own—a purpose based upon a commendable precaution to protect its credit against unfounded pretences, and in no wise fraudulent —and that mode of transacting the business naturally continued after the reasons for it had probably ceased.

If we leave out of view the effect of the account shown in the special pass-books "E" and "G," the right of the city as against the bank would seem to be sufficiently clear. The case would then be this: The bank was the general debtor of the city, having funds subject to its check or draft. Let us take the transaction of April 25th, for it represents all the others. The city comptroller directs the city treasurer "to remit" to the Bank of the Republic $51,000 to pay the bonds and coupons of the city falling due at that bank on the following month. On the same day the city treasurer draws in favor of the bank his check for the amount and encloses it to the president of the bank, with directions, inter alia, "to remit" to the Bank of the Republic, in New York, $51,000, "to pay bonds and coupons of the city falling due (at that bank) in May next." The bank at once charges the amount of that check to the city, which has the effect to reduce the city's balance with the bank and to stop interest to that extent. If the money had passed over the counter to the city treasurer, and he had delivered it to another bank, with instructions to remit to a particular bank for a specified and definite purpose, such bank would have been the agent of the city to remit or transmit the money of the city; it would remain the money of the city, notwithstanding it may have been credited on account to the agent, and

not to the principal, and this with the consent of the two. If such bank had transmitted the money by express, the money would be the city's; if by draft, it would be the agent of the city for that purpose; but when its instructions were obeyed and the money duly received by the appointed depository, all liability would be at an end. If the appointed depository failed, the loss could not be thrown upon the agent.

But the money was not paid over the counter to the city, and the city did not select some other agent or bank to remit or transmit it to the Bank of the Republic, but selected its general depository to make the remittance, and accepted a credit in another account for the same sum. The bank remitted the sum, as directed by the city, to the Bank of the Republic, with specific directions to credit the amount to it, and to use the same "to pay the bonds and coupons of the city maturing at your bank next month," and charge the amount to the account of the bank here, and forward to this bank the bonds and coupons cancelled.

The letter of the treasurer to the president of the bank made the bank here the agent of the city to remit, and if the bank here did remit accordingly, and placed the sum with the designated bank, i. e., the Bank of the Republic, it did its duty, and would not be liable to the city if the Bank of the Republic had failed with this fund on hand. Though the amount stood on the books of the Bank of the Republic to the credit of the bank here, yet that was by the city's consent and for its convenience. It imposed, as between the bank here and the city, no additional liability on the bank, and it deprived the city of none of its rights; such would be the effect of the letter of the treasurer to the president of the bank, if there is nothing to qualify or change it in the other circumstances of the case. The main circumstance relied on is that the city, at the time it gave directions to remit, accepted on another account and pass-book a credit from the bank for the same sum—the bank, by such credit, acknowledging itself to be the debtor of the city for the amount it had undertaken to remit. If this is the controlling element in the case, then the relation of debtor and creditor between the city and bank never ceased, as respects the sum directed to be remitted, and remained the same as before, and continued so to remain after the sum was placed, as directed, with the Bank of the Republic.

But, in my judgment, this is not the controlling element in the cause. The special pass-books are to be regarded as in the nature of memoranda, and adopted for the sake of convenience, and have the same effect as if the bank had given to the city a receipt for the money received, and promised therein to remit the same to the Bank of the Republic for the purpose of paying the coupons of the city.

The bank charged the city with exchange on the amount it thus received, the same as it would have charged if the draft had been for any other customer. It became the agent of the city to transmit the money. The money, when placed in the Bank of the Republic, was, as between the Missouri bank and the city, the money of the latter. When the agent presented coupons cancelled, this showed that the agent had discharged the duty it had undertaken.

It is my judgment that the relation between the Missouri bank and the city, as respects the money deposited with the Bank of the Republic, was not that of debtor and creditor strictly, but that of principal and agent, with the duties and liabilities of the latter, and not those of the former relation. The moneys deposited by the Missouri bank in its name with the Bank of the Republic, were, as between the former bank and the city, trust moneys, and in equity they belong to the cestui que trust, and the latter has the right to pursue and claim them as against all persons who do not stand free of the trust.

This view is not regarded as at all in conflict with the cases cited and relied on by the defendant's counsel. Marine Bank v. Fulton Bank, 2 Wall. [69 U. S.] 252; Savings Bank Case [unreported], per Mr. Justice Miller.

A decree will be entered adjudging the money in controversy to belong to the city. Decree accordingly.

See Levi v. National Bank of Missouri [Case No. 8,289].