### Baer *v.* English & Company.

| 84 | 403 |
| 93 | 486 |
| 84 | 403 |
| 94 | 763; |
| 84 | 403 |
| 96 | 258 |
| 96 | 815 |
| 84 | 403 |
| 120 | 715 |

1. An ordinary bill of exchange, negotiable as commercial paper, payable out of no particular fund, though drawn by a creditor upon his debtor and delivered to his own creditor to be collected by him and the proceeds applied to the claim of the latter creditor against the former, will not, while unaccepted, operate as an assignment, legal or equitable, of a debt due by account from the drawee of the bill to the drawer thereof.

2. Nor can the bill be made so to operate by extrinsic evidence if the intention was to give preference of one creditor of the drawer over another by mere incidental or equitable assignment of the account, not in actual payment of the preferred creditor, but by way of collateral security or authority to collect and apply proceeds.

3. As the acceptance of a bill, to be obligatory, must be made in writing, an oral promise by the drawee to pay so much upon it as may be ascertained to be due has no efficacy in holding off creditors of the drawer who may serve garnishment upon the drawee before the bill is either accepted or paid in whole or in part.

February 24, 1890.

Garnishment.   Drafts.   Negotiable   instruments. Debtor and creditor.   Assignment.   Acceptance.   Evidence.   Contracts.   Before Judge Gustin.   Bibb superior court.   May term, 1889.

Reported in the decision.

Hardeman, Davis & Nottingham, for plaintiff.

Dessau & Bartlett, for defendants.

Bleckley, Chief Justice.

Myrick & Bowman were indebted to Gordon by book account, and Gordon was indebted to English & Co. also by account.   Gordon turned over to English & Co. his books and papers for them to ascertain therefrom the amount which Myrick & Bowman owed him, with a view to their collecting the same and applying the money when collected to their account against him, Gordon.   The amount being thus ascertained and fixed at six hundred and sixty-five dollars, Gordon signed a bill of exchange on Myrick & Bowman for that sum, payable at sight to the order of I. C. Plant & Son, and

delivered it to English & Co., leaving with them the books and papers to which reference had been made in arriving at the amount for which the bill was to be drawn. Plant & Son were the bankers of English & Co., and had no beneficial interest in the bill. It was made payable to their order at the suggestion of English & Co., and for their convenience in collecting. The bill was never accepted by the drawees in writing, and consequently never became obligatory upon them. Code, §1950; *Ingle* v. *Davis*, 81 *Ga.* 766. It was presented to them, however, by English & Co. without any indorsement upon it, and they promised orally to pay when they ascertained for themselves how much they owed Gordon, which it was understood would be in a few days. But before they were ready to make payment, they were served with garnishments at the instance of Baer as a creditor of Gordon. To these garnishments they answered that their indebtedness to Gordon was two hundred and fifty-eight dollars and ninety-six cents, but that before being summoned as garnishees they had, with the knowledge and verbal approbation of Gordon, made to English & Co. an oral promise to pay to them. English & Co. interposed their claim as pointed out in section 3541 of the code, and traversed so much of the answer as recognized the debt as owing to Gordon, they insisting that it was their property. At the trial of the claim, the facts appeared substantially as above set out. It further appeared that the bill remained unindorsed until the day before the trial, and that it was then indorsed by the payees in blank without recourse on them. Also that, pending the garnishments and after they were answered, the garnishees paid over to the claimants by way of compromise in full of the debt to Gordon from Myrick & Bowman three hundred dollars, which sum was then credited to Gordon on his account with English & Co., the claimants, no credit of any amount

having been previously entered on that account. The jury found for the claimants, and the court refused to grant a new trial. Besides the general grounds, the motion for a new trial presents several special grounds, but we grasp the case as a whole and deal with the essential elements that control it.

1. The bill on its face was an ordinary bill of exchange, negotiable as commercial paper, based on the general credit of the drawer, not upon any particular fund. According to all the authorities, it would not operate as a legal assignment of the account owing by Myrick & Bowman, the drawees, to Gordon, the drawer. And according to the decided preponderance of authority, it would not operate as even an equitable assignment of that account. 1 Am. & Eng. Enc. Law, p. 836; 6 *Id.* p. 657, 658; 1 Daniel Neg. Inst. §19 *et seq.;* Tiedeman on Com. Paper, §5 *et seq.;* 2 Randolph on Com. Paper, §589; 1 Parsons on Bills and Notes, p. 331 *et seq.;* 1 Edwards on Bills and Notes, §531, 532; Whitney *v.* Bank, 137 Mass. 351.

2. There may be cases (see *Daniel* v. *Tarver,* 70 *Ga.* 203) in which the doctrine of equitable assignment would still have application, notwithstanding the code furnishes the means by which to accomplish a legal assignment without any aid from equitable principles. But we think the case of making preferences by a debtor between his existing creditors is not one of them. The code, §1953, provides that "A debtor may prefer one creditor to another, and to that end he may *bona fide* give a lien by mortgage or other legal means, or he may sell in payment of the debt, or he may transfer negotiable papers as collateral security, the surplus in such cases not being reserved for his own benefit or that of any other favored creditor, to the exclusion of other creditors." He may sell an account in payment of his debt, or he may transfer negotiable papers as collateral security. But an account, not being

negotiable paper, cannot, we think, be transferred as collateral security for an existing debt to the prejudice of another existing creditor. Or if it can be done at all, certainly not without writing expressly manifesting the transfer. A preference by mere equitable assignment, unless made to extinguish a debt, should not be recognized. *Gamble* v. *Central Railroad*, 80 *Ga.* 600. Here the debts to the garnishing creditor were in existence when the bill was drawn, and the debt to English & Co. was not extinguished, nor was any part of it extinguished by the delivery of the bill, or by anything done or agreed to be done, before the garnishments were served.

There are authorities to the effect that such a bill, notwithstanding its negotiable element, may be used in connection with extrinsic evidence manifesting the intent of the parties, to establish an equitable assignment. The case of Throop Grain Cleaner Co. *v.* Smith, 110 N. Y. 83, was urged upon us in argument as a decisive authority in favor of resorting to extrinsic evidence, but in the report it appears that all the evidence considered was in writing. Moreover, whether the draft involved in that case was negotiable is not stated, and according to what was said by the New York Court of Appeals in Evansville National Bank *v.* Kaufman, 93 N. Y. 280, the word "draft" does not necessarily or even usually imply negotiability. The whole doctrine of equitable assignment of choses in action grew up in consequence of the fact that, as to many of them, there could be no other sort of assignment. See Spain *v.* Hamilton, 1 Wall. 604, cited in Lacliede Bank *v.* Schuler, 120 U. S. 516. This reason, since the adoption of the code, no longer applies in Georgia. For, by section 2244, all choses in action arising upon contract are assignable so as to vest the title in the assignee. With us, therefore, where the parties really intend an assign-

ment, they can execute their intention fully and completely. But, as ruled in *Turk* v. *Cook*, 63 *Ga.* 681, the assignment must not rest in parol, but must be in writing. See also *Planters' Bank* v. *Prater*, 64 *Ga.* 613 ; Life In. Co. *v.* Watson, 30 Fed. Rep. 653.

3. We think the drawing and delivery of the bill and the presenting of it for payment constituted no assignment, legal or equitable, of the debt owing by Myrick & Bowman to Gordon. And as Myrick & Bowman failed to accept the bill in writing, and thereby to create a legal obligation upon them to pay it in whole or in part, their willingness to pay, coupled with a parol promise to do so to the extent of their real indebtedness to Gordon, had no legal efficacy whatever. Luff *v.* Pope, 5 Hill, 413 ; affirmed in 7 Hill, 577 ; Dolsen *v.* Brown, 13 La. An. 551 ; Kimball *v.* Donald, 20 Mo. 577. Bronson, J., said, in Luff *v.* Pope, 5 Hill *supra :* "To give a parol promise to pay the effect of a written acceptance of a bill, would be no better than a device to get around the statute and defeat all the valuable ends which it was designed to accomplish." This seems to us a sound view of the subject. All the mischiefs of a parol acceptance which the legislature designed to cut off by requiring written evidence of acceptance, would attach to oral promises like the one under consideration. Indeed, what was the promise made by Myrick & Bowman but a qualified acceptance of the bill in parol ? The case of Griffin *v.* Weatherby, L. R., 3 Q. B., 753, may be at variance with this doctrine, but although in that case the bill was not accepted as the statute required to render acceptance obligatory, yet the promise of the drawee was established by written correspondence. Perhaps, therefore, the ruling in that case could be upheld consistently with the principles of our law.

The court erred in not granting a new trial.

*Judgment reversed.*