## JONES *v.* GLOVER, receiver.

1. In order to defeat a garnishment on the ground that the debtor had made an equitable assignment of the fund before the garnishment was served, facts or circumstances must appear from which it could rightly be inferred by a jury, both that a complete equity had arisen between the assignor and the assignee which would support an assignment, and that these two parties contemplated an immediate change of ownership with respect to the particular fund in question.
2. Irrespective of any error in the charge of the court or in its refusal to charge as requested, the case had a right result. The evidence was wholly insufficient to warrant any verdict except that rendered by the jury, and there was no error in denying a new trial.

December 18, 1893.

Garnishment and claim. Before Judge FALLIGANT. Chatham superior court. December term, 1892.

The contest was over a fund in the hands of Warren & Axson, garnishees in a suit against Maddox. Jones filed a claim to the fund. Before the service, on May 29, 1890, of the summons of garnishment, a draft of Maddox in favor of Jones, dated May 24, 1890, was presented to the garnishees, who declined to pay it until their account against the firm of Kreutz & Co., of which Maddox had been a partner, was settled. The testimony showed that when this partnership was formed, the garnishees assumed a large amount for it, and Maddox, having private effects, placed in the hands of the garnishees the fund in controversy. After some months the garnishees learned that said partnership was to be dissolved, and that Kreutz was to assume all of its liabili-

ties. The garnishees thereupon insisted that they would hold both partners, and notified them that they would hold the fund so deposited, subject to the final settlement of the account against Kreutz & Co. On May 24, 1890, Maddox wrote to the garnishees that the money deposited with them was his individual property; that he had made a trade with Jones, and would draw in Jones' favor for the amount, and hoped they would honor the draft; that it would not be just to keep him (Maddox) out of the use of the money when he needed it, and when they were already well secured. The garnishees would have paid the draft when presented, but for their claim against Kreutz & Co. It turned out that Kreutz paid the entire account of the firm, which was settled before the garnishees filed their answer.

The jury found for the plaintiff, and claimant's motion for a new trial was overruled.

GIGNILLIAT & STUBBS and CALHOUN, KING & SPALDING, for plaintiff in error. DENMARK & ADAMS, *contra.*

BLECKLEY, Chief Justice.

1. The question on the merits was, whether the fund garnished in the hands of Warren & Axson was the property of Maddox at the time the garnishment was served, or whether it was the property of Jones by reason of the draft previously drawn by Maddox, payable to the order of Jones, upon Warren & Axson, and indorsed by Jones to Baldwin & Co. Notice that the draft would be drawn was communicated to the drawees by a letter from Maddox, which they received before they were served with the garnishment; but this letter, although it stated that a trade had been made with Jones, said nothing expressly of any assignment of the fund to him, but on the contrary urged payment of the draft because it would be unjust to keep him, Maddox, out of the use of the money when he needed it. Except

the mere say-so of Maddox in the letter, there was no evidence whatever of any actual trade between him and Jones. . So far as appears, the drawing and indorsement of the draft might have been for the mere purpose of collection for the benefit of Maddox. When an action is brought upon negotiable paper in favor of a payee or indorsee, the presumption is that the plaintiff is a holder for value. But here there is no action on the draft itself or on the indorsement, but the draft is sought to be used, not as evidence of title to the paper, but as evidence of ownership, legal or equitable, of the fund in controversy. The draft was not drawn expressly on this fund or any other, but purported to be for value received and directed the amount to be charged to account of the drawer. In form and effect it was a bill of exchange by Maddox upon Warren & Axson, and in itself did not operate as an assignment of the fund. *Baer* v. *English*, 84 *Ga*. 403, and cases cited; *Haas* v. *Old National Bank*, 91 *Ga*. 307. It was evidence tending to show an equitable assignment, and together with the letter, had there been evidence that some actual trade had been made between Maddox and Jones embracing a change of beneficial ownership in this fund, would have been sufficient to establish such an assignment. But as the case stood before the jury, one of the material elements of an equitable assignment, namely a consideration passing from Jones to Maddox, was wanting. There was nothing for the jury to look to as evidence of any consideration, except what Maddox affirmed in the draft and in the letter: in the draft, that it was drawn for value received; and in the letter, that he had made a trade with Jones. Had these same expressions been used in an express assignment of the fund, or if such an assignment had been connected with them in the draft or the letter, they could and would have been taken as *prima facie* true, for in that case

an intention to assign the fund would have appeared otherwise than by inference. When the intention to assign is to be inferred from other facts, all the facts requisite to form a basis for the inference must be proved. None of them can be taken as true merely because they are recited in documents which might have been concocted by a debtor for the sole purpose of withdrawing his money from a custody in which it was exposed to the reach of his creditor by means of garnishment. In order to infer an equitable assignment, such facts or circumstances must appear as would not only raise an equity between the assignor and assignee, but show that the parties contemplated an immediate change of ownership with respect to the particular fund in question, not a change of ownership when the fund should be collected or realized, but at the time of the transaction relied upon to constitute the assignment. Had there been proof of an actual consideration paid or promised by Jones for the draft, a jury could well have made the inference, from that and the other facts, that an intention existed when the draft was drawn to make Jones the owner of the fund and to divest Maddox of the substantial ownership of the same though his legal title would still have been intact. It appears from the bill of exceptions that Maddox and Jones were both in court when the case was tried, but neither of them testified. Their silence was strongly corroborative of the theory that the draft was without consideration, that no assignment of the fund was actually intended, and that the collection attempted was for the benefit of Maddox.

2. The verdict of the jury was correct; the evidence was insufficient to warrant any other, and whether the court ought to have charged more or less than he did, there was no error in denying a new trial.

*Judgment affirmed.*