SALZBURGER BANK *v.* STANDARD OIL COMPANY.

*Kennedy & McWhorter,* for plaintiff in error.

*Anderson, Cann & Cann,* contra.

HINES, J. An agent of the Standard Oil Company collected or received funds belonging to that company, amounting to $955.81. He turned these funds over to the Salzburger Bank at Pineora, Georgia, for the sole purpose of having the bank remit them to the oil company at its district office in Savannah, Georgia. To effectuate this purpose the bank, on January 28, 1930, issued to the oil company its two cashier's checks amounting to the sum stated above. These checks were drawn on the Savannah Bank & Trust Company of Savannah. The oil company had no account with the drawing bank, and was not a depositor therein. These checks were delivered to the agent for the oil company, and by this agent promptly forwarded to the oil company at Savannah, and were by it presented for payment to the drawee bank on January 29, 1930. Payment of them was refused because the drawer bank had closed its doors and had been taken over by the superintendent of banks for liquidation. The amount represented by the checks has never been paid to the oil company. That company did not know or suspect the insolvency of the drawer bank, but on the contrary was satisfied that this bank was solvent and that said checks would be paid when presented to the drawee bank. The oil company filed its petition against the drawer bank, containing four counts, each alleging the facts hereinbefore stated.

In the first count the plaintiff further alleges that the bank is due the principal amount of said checks, with interest from January 29, 1930; that by reason of the facts alleged it is entitled to a lien for such amount on the assets of the defendant bank, which lien should rank with other liens according to date; and that this lien should attach as of January 28, 1930. In the second count it is further alleged that said sum of $955.81 was received by the bank when the bank and its officers knew that it was insolvent, and thereby a fraud was perpetrated upon the plaintiff by the bank and its officers, which unjustly enriched the bank, and its assets were fraudulently increased to that extent at the expense and to the damage of the plaintiff; and that as a result of such conduct on the part of the bank its assets became impressed with a trust to

the extent of said sum, to be paid out of its assets as a debt due by the bank as trustee or other fiduciary of like character. In the third count it is further alleged that at the time said sum of $955.81 was delivered to the bank and at the time the cashier's checks were presented to the drawee bank for payment and payment was refused for the reason hereinbefore stated, the drawee bank had in its possession property, money, or effects belonging to the drawer bank, in excess of any and all indebtedness due by the drawer bank to the drawee, and more than sufficient to pay said sum, and that for this reason the plaintiff is entitled, in view of the bank's insolvency and the facts and circumstances hereinbefore stated, to be subrogated to the rights of the drawee bank in the property held by it. The plaintiff claims that it is entitled to payment of said sum out of the assets in the hands of the drawee bank in excess of any amount due by the drawer bank to drawee and that it is entitled to a lien on such excess assets and to priority of payment therefrom. In the fourth count the plaintiff further alleges that at the time said sum of money was delivered to the bank, and at the time when the cashier's checks were presented for payment and payment of the same was refused for the reason hereinbefore stated, the drawee bank had in its possession property, money, or effects belonging to the drawer bank in excess of any and all indebtedness due by the drawer to the drawee, and which were more than sufficient to pay said sum; and that for this reason the plaintiff was entitled to have said property in the hands of the drawee, in excess of any indebtedness due by the drawer bank to the drawee, impressed with a trust for the payment of said checks out of the proceeds of such excess, for the reason that the taking of the property of the drawer bank and issuance to the plaintiff by that bank of its cashier's checks on the drawee, at the time and under the circumstances heretofore alleged, was an equitable assignment of a sufficient amount of the assets held by the drawee, in excess of any liability by the drawer bank to the drawee, to pay the amount of these cashier's checks.

In each of said counts it is alleged that the plaintiff's claim was duly filed with the superintendent of banks, and by him was rejected and put in the class of contractual obligations on March 17, 1930. In the first count the plaintiff prays for a judgment against the bank for $955.81, with interest, and that its right to a lien

and priority of payment be adjudged and declared. In the second count it prays for a judgment against the bank for the same amount, and that the assets of the bank be declared to be impressed with a trust for the payment of said sum, and its right to a lien and of priority of payment be adjudged and declared. In the third count it prays for a judgment against the bank for a like sum, with interest, and that a lien therefor be set up in its favor upon the assets of the drawer bank in the hands of the drawee in excess of any indebtedness due by the drawer to the drawee, and that its priority of payment be adjudged and declared. In the fourth count it prays for a judgment against the bank for said sum, with interest, and that a lien therefor be set up in its favor upon the assets of the drawer in the hands of the drawee in excess of any indebtedness due by the drawer bank to the drawee, and that its priority of payment be adjudged and declared.

The defendant bank demurred to the petition and each of the four counts thereof, upon the grounds that neither the petition as a whole nor any count thereof sets forth a cause of action against it, and that neither the petition as a whole nor any count thereof alleges that the bank had any knowledge whatsoever of the purpose of the oil company's agent in purchasing its cashier's checks. There were special grounds of demurrer, hereinafter referred to. The judge overruled the demurrers, and the defendant bank excepted.

█ Does the first count of the petition set forth a cause of action? An agent of the Standard Oil Company had collected or received at Pineora, Georgia, funds belonging to that company. He desired to have these funds remitted to that company at its district office in Savannah, Georgia. For this sole purpose he turned these funds over to the Salzburger Bank at Pineora. To effectuate the purpose for which these funds were delivered to it, the bank issued its cashier's checks, payable to the oil company and drawn upon the Savannah Bank & Trust Company, its correspondent at Savannah. The latter had ample funds of the drawing bank to pay these checks. The bank then delivered these checks to the agent to be forwarded to the oil company. The agent promptly forwarded them, and they were received by the oil company at its Savannah office on the day after they were issued. They were presented by the oil company to the trust company, and

payment was refused for the reason that the bank had closed its doors and was taken over by the superintendent of banks for liquidation. In consequence these checks have not been paid, and the funds so turned over to the bank and for which said checks were issued have never been received by the oil company. In these circumstances it seems clear that the bank is liable to the oil company for its failure to deliver these funds to that company at its district office in Savannah. If an agent places money in the hands of a bank to be delivered to his principal, a trust arises in favor of the latter. The acceptance of the money with notice of its ultimate destination creates a duty on the part of the bank to devote it to the purpose intended, and a court of equity will enforce the trust. McKee v. Lamon, 159 U. S. 317, 322 (16 Sup. Ct. 11, 40 L. ed. 165) ; Re Interborough Con. Cor., 288 Fed. 334 (32 A. L. R. 932). One who receives money to be paid to another, or to be applied to a particular purpose, to which he does not apply it, is a trustee, and may be sued either at law for money had and received, or in equity as a trustee for a breach of trust. Scott v. Surman, Willes, 404, 405; Kane v. Bloodgood, 7 Johns. Ch. 90 (11 Am. D. 417) ; Taylor v. Benham, 5 How. (U. S.) 232, 274 (12 L. ed. 130) ; Re Interborough Con. Cor., supra. A delivery of these funds to the bank was not in any strict sense a deposit. It was not, strictly speaking, a special deposit. While the delivery of these funds to the bank partook of the nature of a special deposit, it is more accurate to look on it as one of a distinct class of deposits. In receiving a deposit made for the purpose of having it applied to a particular purpose, the bank acts as agent of the depositor; and when the bank fails to apply it at all, or misapplies it, it can be recovered as a trust deposit. On such failure the bank becomes liable to the depositor as its agent or trustee. *Southern Exchange Bank* v. *Pope,* 152 *Ga.* 162 (108 S. E. 551) ; *Williams* v. *Bennett,* 158 *Ga.* 488, 495 (123 S. E. 683).

The bank undertook to discharge this obligation by giving the oil company its checks on the trust company; but they were not paid. Checks given in payment of a debt or obligation do not constitute payment until themselves paid. Civil Code (1910), § 4314. When the bank received these funds they were impressed with a charge in favor of the oil company. This created in its favor an equitable lien on the funds; and equity will aid in restoring the

funds to their legitimate purpose. The funds having been turned over to the bank on one day, and the bank having been taken in charge by the superintendent of banks on the next day for liquidation as insolvent, it may well be inferred that the funds were still in the hands of the bank. It is not to be supposed that these funds were dissipated and lost in so short a time. McLeod v. Evans, 66 Wis. 401 (28 N. W. 173, 214, 57 Am. R. 287). If the bank, thus having charge of these funds as the property of the oil company, so confounded them with its own that the line of distinction can not be drawn, all the inconvenience is thrown upon the bank which causes the confusion, and it must distinguish its own property or lose it. Town of Douglasville v. Mobley, 169 Ga. 53 (149 S. E. 575). But if these funds can not be traced, then the oil company will be entitled to a recovery upon the theory, as we shall hereinafter endeavor to show, that the transaction amounted to an assignment by the bank to the oil company of so much of its assets in the hands of the trust company as were necessary to satisfy its claim. So we are of the opinion that the first count of the petition sets forth a cause of action.

■ In the second count of the petition it is alleged that these funds were received by the bank when the bank and its officers knew that it was insolvent, and thereby a fraud was perpetrated upon the plaintiff by the bank and its officers, which unjustly enriched the bank and fraudulently increased its assets to the extent of these funds, to its damage, and that as a result of such conduct on the part of the bank its assets became impressed with a trust to the extent of said sum to be paid out of its assets as a debt due it by the bank as trustee. Where money is received by an insolvent bank for the purchase of a draft which it knows to be worthless, it will be held by such bank in trust for its owner, who is entitled to priority over general creditors. Whitcomb v. Carpenter, 134 Iowa, 227 (111 N. W. 825, 10 L. R. A. (N. S.) 928); Brown v. Sheldon State Bank, 139 Iowa, 83 (117 N. W. 289); Widman v. Kellogg, 22 N. D. 396 (133 N. W. 1020, 39 L. R. A. (N. S.) 562). A deposit of money obtained by fraud when a bank is hopelessly insolvent creates a trust in favor of the depositor, and can be recovered from a receiver of the bank, even if the identical money deposited does not pass into his hands, when the funds received by him are in any event increased by the

amount of the deposit. Richmond *v.* New Orleans &c. Co., 102 Fed. 789 (52 L. R. A. 67). The same principle is applicable where an agent turns over money of his principal to a bank for remittance to the principal, and where the bank to effectuate this purpose issues to the principal its cashier's checks drawn upon another bank in favor of the principal for such money. The act of the bank in taking the money of the principal for the checks which the bank and its officers knew were worthless, because the bank was insolvent, and which the bank had no assurance would be honored when presented for payment, was wrong in law and was reprehensible in morals. The money was not given to the bank as a deposit or as a loan. The bank received the money upon its express or implied representation that it was solvent, that it was not upon the brink of insolvency, that it was not in such condition that it could be taken over at any time for liquidation, and that it had such moneys or credit with the bank upon which the checks were drawn that, upon their presentation, a like sum would be paid to the drawee therein. This representation the bank knew to be untrue, as it knew it was insolvent and that these checks might not be paid; and the bank must be held to have received the money wrongfully, and to hold it in trust for the plaintiff, whose agent delivered the money to the bank for transmission to the plaintiff. A trust is implied "Where, from any fraud, one person obtains the title to property which rightfully belongs to another." Civil Code (1910), § 3739. This section expressly recognizes trusts which arise ex maleficio. *Jenkins* v. *Lane,* 154 *Ga.* 454, 457 (115 S. E. 126). On this subject see Smith *v.* Des Moines National Bank, 107 Iowa, 620 (78 N. W. 238).

The present case under its facts does not come within the principle that in the absence of fraud the purchaser of a draft or check from an insolvent bank, for which he pays cash, is not entitled to a preference over general creditors in an insolvency proceeding. We are dealing with this count of the petition upon the facts therein set forth; and under these facts an implied trust arose in favor of the plaintiff against the bank. It follows that the second count sets forth a good cause of action.

■ In the third count the plaintiff insists that under the facts of this case it is entitled pro tanto to be subrogated to the rights

of the Savannah Bank & Trust Co. in the property of the defendant bank held by it. This count alleges that the trust company had in its possession property, money, or effects belonging to the bank, in excess of all indebtedness due by the bank to the trust company, which excess is sufficient to pay its claim, and that for this reason the plaintiff is entitled, in view of the bank's insolvency and the facts and circumstances of this case, to be subrogated to the rights of the trust company to the property held by it. Plaintiff asserts that it is entitled to a lien on such excess assets, and to priority of payment of its claim therefrom. It will be noted that the plaintiff claims that the trust company had in its possession effects of the bank, in excess of all indebtedness due by the bank to it, more than sufficient to pay the sum of money turned over by the oil company to the bank, and that for this reason the oil company is entitled "to be subrogated to the rights of the trust company in the property of the bank held by it." The language quoted is to be construed in connection with the circumstances and facts alleged in this count. The plaintiff's agent turned over to the bank money to be remitted to the plaintiff at its Savannah office. To accomplish this purpose the bank issued to the plaintiff its cashier's checks for the sum of money so turned over by the agent to the bank for remittance. These drafts were drawn on the trust company, which had sufficient funds in its possession, over and above any indebtedness of the bank to it, to pay these checks. In effect the transaction was a substitution of the funds in the hands of the correspondent at Savannah for the funds so turned over to the bank by the plaintiff's agent. By the use of the word "subrogated" in this count, the pleader evidently had reference to this substitution; and did not mean to allege that this transaction came strictly within the principle of equitable subrogation, but that it simply amounted to a substitution, for the money turned over by the agent, of the money of the bank in the hands of its correspondent at Savannah. The method employed was simply the means adopted by the bank in carrying out its agreement with the plaintiff to transmit to it at its Savannah office. the funds so turned over to the bank. It was the method employed by the bank in carrying out the special purpose for which the funds were delivered by the plaintiff's agent to the bank.

So construing the pleading, we are of the opinion that the third

count of the petition set forth a cause of action. The delivery of this money to the defendant bank was not a deposit in the sense wherein that word is commonly used in banking transactions. It did not create the relation of debtor and creditor. It was a mere method employed by the bank to transmit these funds to the plaintiff at its Savannah office. Widman v. Kellogg, supra. The transaction is similar to one where a bank receives money on a collection and sends its draft in payment thereof. In such a case the fund so received is a trust fund; and when the bank goes into the hands of the receiver, the sender of the collection would be entitled to a preference in respect of this amount. Brown v. Sheldon State Bank, 139 Iowa, 83 (117 N. W. 289). Where a sum of money is left with a bank, to be transmitted, the courts have uniformly held that a trust exists in favor of the owner. No title to or interest in such fund passes to the bank. It holds the fund in trust for the depositor. Its breach of the trust confers no rights upon it or those in privity with it. St. Louis v. Johnson, 5 Dill. 241 (Fed. Cas. 12,235); Ryan v. Phillips, 13 Kan. App. 704 (44 Pac. 900); Stoller v. Cutts, 38 Mo. 514. If funds so left with a bank are mingled with its general assets, and go to swell its general estate, the trust therefor attaches to the entire estate, even though the specific funds can not be traced. Ray v. Elliott, 30 Kan. 156 (1 Pac. 44, 46 Am. R. 90); Myers v. Board of Education, 51 Kan. 87 (32 Pac. 658, 37 Am. St. R. 263); Ryan v. Phillips, supra.

■ We come next to deal with the fourth count in the petition. In this count the plaintiff insists that the transaction was an equitable assignment of a sufficient amount of the assets of the bank held by the trust company, in excess of any liability of the bank, to pay the amount of these cashier's checks. This contention is denied by the bank. It is undoubtedly true that an ordinary draft, drawn by a creditor upon his debtor and not made payable out of any particular fund, does not, before acceptance, operate as an assignment, either legal or equitable, to the drawer of money due by account from the drawee to the drawer of the draft. *Baer* v. *English,* 84 *Ga.* 403 (11 S. E. 453, 20 Am. St. R. 372); *Jones* v. *Glover,* 93 *Ga.* 484 (21 S. E. 50); *Georgia Seed Co.* v. *Talmadge,* 96 *Ga.* 254 (23 S. E. 1001); *Talladega Mercantile Co.* v. *Robinson &c. Co.,* 96 *Ga.* 815 (22 S. E. 1003); *Reviere* v. *Chambliss,*

120 *Ga.* 714 (48 S. E. 122) ; *Bank of Hamilton* v. *Williams,* 146 *Ga.* 96 (90 S. E. 718). This principle is now included in the negotiable instruments law of this State. By this statute it is declared that "A bill of itself does not operate as an assignment of the funds in the hands of the drawee available for the payment thereof, and the drawee is not liable on the bill unless and until he accepts the same." Acts 1924, p. 152, 12 Park's Code Supp. 1926, § 4277(2). Again, this statute provides that "A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder unless and until it accepts or certifies the check." Acts 1924, p. 163, 12 Park's Code Supp. 1926, § 4284(6).

So both by the decisions of this court and by our negotiable instruments law a check or draft by itself, before acceptance or certification, does not amount to an assignment of the funds of the drawer in the hands of the drawee. In the above and other decisions, this court has recognized the existence and validity of equitable assignments arising in parol. In *Daniel* v. *Tarver,* 70 *Ga.* 203, one who had induced another to give credit to a third party bought the account of the latter, made out in gross, at half price, and gave his note for the purchase-money thereof; and this court held that while an assignment of an account should be in writing to pass the legal title to an open account, the transaction amounted to an equitable assignment of the account to the purchaser, on which he could sue in the name of the creditor for his use. Here the parol assignment of an open account, for value, was held to be a good equitable assignment, and to have passed the equitable title thereto to the purchaser. In *Baer* v. *English,* supra, Chief Justice Bleckley, who delivered the opinion in the case, said: "There may be cases (see *Daniel* v. *Tarver,* 70 *Ga.* 203) in which the doctrine of equitable assignment would still have application, notwithstanding the code furnished the means by which to accomplish a legal assignment without any aid from equitable principles." Again in *Jones* v. *Glover,* supra, Chief Justice Bleckley said: "In order to infer an equitable assignment, such facts or circumstances must appear as would not only raise an equity between the assignor and assignee, but show that the parties contemplated an immediate change of ownership with respect to the particular fund in question, not a change of ownership when the

fund should be collected or realized, but at the time of the transaction relied upon to constitute the assignment. Had there been proof of an actual consideration paid or promised by Jones for the draft, a jury could well have made the inference, from that and other facts, that an intention existed when the draft was drawn to make Jones the owner of the fund and to divest Maddox of the substantial ownership of the same, though his legal title would still have been intact." In the case at bar, there was a present cash consideration moving from the plaintiff to the bank, constituting a consideration for the cashier's checks given by the bank to the plaintiff. This cash consideration amounted to the sum total of the two checks so issued. From these and other facts we could well draw the inference that the intention existed when the checks were drawn to make the plaintiff the owner of the funds in the hands of the trust company, to the amount of these two checks, and to divest the bank of the substantial ownership of the same, though its legal title would still have been intact.

To constitute a valid assignment of a chose in action, either in toto or pro tanto, no particular form of words or formal instrument is necessary. Any language which makes an appropriation of the funds amounts to an equitable assignment. *Walton* v. *Horkan*, 112 *Ga.* 814 (38 S. E. 105, 81 Am. St. R. 77). Any order, writing, or act which makes an appropriation of the debt or funds amounts to an equitable assignment, and such an assignment may rest in parol. *Dugas* v. *Mathews*, 9 *Ga.* 510 (54 Am. D. 361); *Whitehead* v. *Fitzpatrick*, 58 *Ga.* 348; *First National Bank* v. *Hartman Steel Co.*, 87 *Ga.* 435 (13 S. E. 586); *Beasley* v. *Anderson*, 167 *Ga.* 470 (146 S. E. 22). Our negotiable instruments law was not intended to, and does not, abrogate equitable assignments and implied trusts as they existed at the time of its passage. The provisions of this act, which we have set out above and which provide that drafts or checks, by themselves, do not operate as assignments of the funds in the hands of the drawee available for the payment thereof, and do not operate as an assignment of any part of the funds to the credit of the drawer with the bank, were not intended to do away with the doctrine of equitable assignments of funds to the credit of the drawers of such instruments in banks upon which they were drawn. Prior to the passage of this act, some courts in this country had held

that a bill or check, in and of itself, operated as an assignment of the funds in the hands of the drawee available for the payment thereof, and made the drawee liable thereon without his acceptance of the same. In other jurisdictions, including this State, the courts held that drafts or checks drawn on banks did not per se operate as assignments of funds of the drawers in these institutions. While so holding, the courts of this State held that there could be equitable assignments of such funds by drafts or checks thereon under certain circumstances. It was one of the purposes of the negotiable instruments law of this State to remove the above conflict, and to do away with the doctrine claimed by certain courts that drafts or checks by themselves operated as assignments of the funds of the drawers in the banks on which they were drawn. The purpose was not to wipe out equitable assignments of funds of the drawers in the banks on which they were drawn. The above provision declares that drafts or checks *by themselves* do not amount to equitable assignments of the funds on which they are drawn. By clear implication these provisions recognize equitable assignments. The provision that they do not *by themselves* operate as equitable assignments clearly implies that they, when taken with other facts, may operate as such equitable assignments.

The transaction in this case clearly operated as an equitable assignment of the funds of the drawing bank in the drawee bank to the extent of the amount of the checks drawn by the drawer upon the drawee. When the plaintiff's agent placed its money in the Salzburger bank for the sole purpose of having it transmitted to the Savannah office of the plaintiff, and with the view of effecting this purpose the bank issued its checks drawn upon its Savannah correspondent, the transaction amounted to an equitable assignment of so much of the funds of the bank in the hands of the Savannah correspondent as was required to pay these checks. This placed the equitable title, if not the legal title, to so much of the funds in the hands of the drawee, belonging to the drawing bank, as was necessary to meet and pay these checks. The bank received the cash for these checks. This cash went to swell the assets of the then insolvent drawer of these checks. Instead of remitting the identical funds received to the plaintiff at its Savannah office, the bank sent its checks to be paid out of its funds in the hands of its Savannah correspondent. It would be inequitable

and unjust, under these circumstances, to permit the bank to hold these funds and not to pay these checks. Creditors of a bank do not stand in any better position than the bank itself, and should not be permitted to take these funds away from the plaintiff.

The cases cited by counsel for the bank are distinguishable from the case which we have in hand. They refer to transactions which are entirely different from the case at bar. In *Schofield Mfg. Co. v. Cochran,* 119 *Ga.* 901 (47 S. E. 208), the deposit was general, and not special. In Spiroplos *v.* Scandinavian-Am. Bank, 116 Wash. 491 (199 Pac. 997, 16 A. L. R. 181), the facts were insufficient to establish a special deposit, and the funds were not turned over to the bank under an agreement that the bank was to transmit them to Spiroplos at Athens, Greece. In the instant case the deposit was in the nature of a special deposit, and the funds were turned over to the Salzburger Bank for transmission to the plaintiff at Savannah. Furthermore, in the case we have under consideration, the funds turned over to the Salzburger Bank swelled its assets. Other cases cited by counsel for the bank involved merely the purchase of drafts from banks which subsequently to the purchase became insolvent. So we are of the opinion that the fourth count of the petition set forth a good cause of action; that the trial judge did not err in overruling the general demurrer.

██ We do not think the rulings of the judge upon the various special demurrers require a reversal.

*Judgment affirmed. All the Justices concur, except Atkinson, J., who dissents.*