FRANK HEATH *vs.* NEW BEDFORD SAFE DEPOSIT AND
TRUST COMPANY.

Suffolk.   November 17, 1903. — January 5, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & BRALEY, JJ.

*Contract. Bank.*

A trust company receiving a sum of money as a deposit for a person in another
city with a request to notify that person by telegraph that the sum has been
placed to his credit, if it credits the deposit and sends the telegram as requested,
establishes the relation of banker and depositor, and can discharge its obligation
only by paying the amount to or upon the order of the person to whom it is
credited or his authorized agent.

CONTRACT for refusal to honor the plaintiff's check for the
sum of $190 alleged to have been deposited in the defendant
trust company, with a count for money had and received. Writ
dated May 21, 1901.

At the trial in the Superior Court before *Pierce,* J., it appeared,
that in 1901 the plaintiff was a stockbroker, doing business in
Boston and elsewhere under the name of Heath and Company.
On May 10, 1901, one Macomber was indebted to the plaintiff
in the sum of $190 as a result of certain stock transactions con-
ducted on behalf of the plaintiff by Macomber with certain per-
sons in New Bedford and its vicinity.   The plaintiff requested
Macomber to deposit this money to the plaintiff's credit, under
the name of Heath and Company, in the defendant trust com-
pany, and to have the defendant telegraph to the plaintiff at
Boston when the deposit was made.   Macomber, accordingly,
made the deposit with the defendant, and the defendant at once
telegraphed to the plaintiff that this amount had been deposited
to the plaintiff's credit by Macomber.

At the time of making the deposit Macomber received from
the defendant a card known as a signature card, for the purpose
of obtaining thereon the signature to be honored by the defend-
ant in checks and drafts against the deposit.   Macomber took
the signature card furnished by the defendant, and sent it to
Heath and Company, and it never was returned to the defendant.
The following day the defendant received a letter by mail pur-

porting to come from Heath and Company, with a letter head bearing in print the name of Heath and Company and the business address of the plaintiff, asking the defendant to remit to them by check on Boston or New York the $190, and apparently enclosing a check for that amount. The defendant also received another letter purporting to come from Heath and Company, with a similar letter head, stating that the signatures thereon would be the signatures which the defendant should honor on checks of Heath and Company. The testimony was conflicting as to whether both of these letters were received in the same envelope.

The defendant thereupon sent for Macomber, and told him to draw out the money. A check was accordingly made out by Macomber for the amount of the deposit, and was signed " Heath & Company by C. W. Macomber," and this check was paid to Macomber by the defendant.

After the payment of the deposit to Macomber, the defendant wrote the following letter to the plaintiff: " Messrs. Heath & Company. Gentlemen : We herewith return you your check on us for $190. Mr. Macomber deposited this amount to your credit, but as we see you propose drawing at once upon it, we told Mr. Macomber to close the account, draw out his money, and we should return this check to you, we not being able to run an account in the way you desire. Yours truly, E. W. Bourne, Cashier."

The plaintiff thereafter drew a check on the defendant for the amount of the deposit which was presented for payment, but the defendant refused to honor it and returned it protested.

The defendant introduced evidence that on May 11 or 12, one Rice, who had acted as an agent of the plaintiff in establishing branch offices in the brokerage business, met Macomber at Taunton, that Macomber paid the amount of the deposit to Rice, and that Rice received it as agent for the plaintiff, knowing that it had been paid previously by the defendant to Macomber. The plaintiff denied that Rice was authorized at any time to collect money for him. The plaintiff also denied that Rice had ever accounted to him for the deposit. The plaintiff contended that no such payment to Rice as testified to by Macomber ever was made.

The jury returned a verdict for the plaintiff for the amount of the deposit; and the defendant alleged exceptions.

*M. R. Hitch & F. L. Norton*, for the defendant.

*J. Cavanagh*, for the plaintiff.

BRALEY, J.  The contention of the defendant that the money was received from Macomber, on the condition that he was to obtain the plaintiff's signature on the card furnished him, and return it to the company, and because he failed to comply with this request the money was not accepted, and it was returned to him, becomes untenable.  At the time the money was handed to the cashier of the defendant he was informed that the deposit was to be made for the benefit of the plaintiff, and he was requested to send a telegram to him that it had been made and placed to his credit.  A telegram was sent accordingly informing the plaintiff that $190 had been placed to his credit by Macomber.

The defendant was not obliged to take the money or send the telegram, but if it chose to do both it must stand by the contract thereby made.

Under the completed transaction the relation between the parties was that of banker and depositor, and the defendant became the debtor to the plaintiff for the amount of the general deposit placed to his credit.  Its liability could be discharged only by payment of the debt.  Ordinarily this could have been done in either of two ways: the plaintiff might have gone in person and demanded and received over the counter the money, or he could draw his check on the defendant for a part or the whole of the sum, and if the company paid to him, or to a person lawfully presenting a check signed by him, its indebtedness would be discharged.  *Carr* v. *National Security Bank*, 107 Mass. 45.

But while Macomber in making the deposit obeyed the instructions given him by the plaintiff, the fact that he was his agent for that purpose would not of itself be sufficient to clothe him with authority to draw it out. · The rule is clear that the acts of an agent not within the scope of his authority do not bind his principal.

The defendant apparently became dissatisfied by reason of the delay in not receiving the card containing the signature of the plaintiff, as well as by the fact that the deposit was to be imme-

diately withdrawn. But its dissatisfaction could not operate to change the nature of the contract, or discharge it from liability.

When it paid over the money to Macomber it did so at its peril, and took the chance, that he was authorized to sign the check by which it was withdrawn in the name and behalf of the plaintiff.

In justification of its action and under an allegation of payment in the answer, it now relies on a subsequent ratification by the plaintiff of this act of Macomber arising out of a settlement of the accounts between them, and in which the amount of the deposit was included and credited to the plaintiff.

But it was a question of fact whether Rice, who purported to be an agent of the plaintiff for that purpose, was authorized by him to make such a settlement, and if so, whether it included the amount of the deposit.

The case was submitted to the jury under instructions which fully stated the legal rights of the parties. By their verdict they have found that the defendant has shown no sufficient legal reason to justify it in refusing to pay the demand of the plaintiff.

*Exceptions overruled.*