# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## WILLIS V. GORRELL & OTHERS.

### JUNE 16, 1904.

1. ATTORNEY FOR COLLECTION—*Security for Debt—Release—Termination of Attorney's Powers.*—After an attorney who has in his hands a debt for collection reports the same as properly secured, and both debtor and creditor thereafter treat the debt so secured as an investment, and the debtor regularly, for a period of ten years, pays the semi-annual interest directly to the creditor, the debt cannot thereafter be regarded as in the hands of the attorney for collection, although he still retains the evidence of it; and his release of the security therefor, without further authority from the creditor, or subsequent ratification by him, will not defeat the creditor's right to the security given for his debt.

2. ATTORNEY FOR COLLECTION—*Payment—Acceptance of Notes.*—An attorney, having in his hands a claim for collection, has no authority to receive anything but money in payment thereof without previous authority obtained from the owner. If he accepts a note for the claim, no subsequent dealings of his with reference to the note, without previous authority or subsequent ratification of the client, can be deemed a ratification by the client.

Appeal from a decree of the Circuit Court of Culpeper county in a suit in chancery wherein the appellant was the complainant, and the appellees were the defendants.

*Reversed.*

The opinion states the case.

*Barbour & Rixey,* for the appellant.

*Grimsley & Miller,* for the appellees.

Cardwell, J., delivered the opinion of the court.

In 1885 James A. Willis held the bond of J. B. Gorrell for
$500.00, which he delivered to G. D. Gray, a practicing attorney
of Culpeper county, for collection, taking the attorney's receipt
therefor. A few days thereafter Mr. Gray reported to Willis,
by letter, that he had his debt against Gorrell secured, and it
appears that on January 30, 1885, Gorrell made a deed of trust
on a large quantity of real estate, securing the Willis debt with
a number of others. Willis, satisfied with having his debt thus
secured, left the bond in the possession of Mr. Gray, but received
directly from Gorrell interest thereon in advance, paid to him
every six months until a subsequent date, when he assigned
the bond to Bettie K. Willis, his wife, of which assignment
Gorrell was notified, and the interest was thereafter paid regu-
larly every six months in advance by Gorrell to Mrs. Willis di-
rectly, or by giving her credit on her account in his drug store.
On the 2d day of April, 1898, Mr. Gray, without the knowl-
edge or consent of either Mr. Willis or Mrs. Willis, and with-
out receiving or pretending to receive payment thereof from
Gorrell, marked on the margin of the deed book in which said
deed of trust was recorded, the following words: "The bond of
$500 to James A. Willis is paid." (Signed) "G. D. Gray, At-
torney," and Gray's signature is duly attested by the clerk, as
required by statute, and on the same day all of the other debts
secured by the deed of trust were also released, and Gor-
rell then conveyed the same property, with other property, to
G. D. Gray, trustee, to secure to one Bickers a bond for a loan
of $6,450. The evident purpose of this release was to clear
Gorrell's title to the land from all encumbrances, so that he
could give a first lien to Bickers, and thus secure the loan then
made. It is not pretended that a dollar was paid to Mr. Gray
for the release of the Willis bond, nor was the bond delivered to
Gorrell at that time, though it was at some time thereafter

marked "Paid in full. G. D. Gray, Atty.," and delivered to Gorrell, and was produced by him in response to a demand in the bill filed in this cause, and when produced it was endorsed, in the handwriting of G. D. Gray, "Int. paid to August, 1898," although, as before remarked, the interest had been regularly paid directly to Willis or Mrs. Willis every six months in advance and never to G. D. Gray. Notwithstanding the release of the deed of trust as to this bond, before stated, Gorrell continued from that time down to February, 1902, to pay interest in advance on the bond to Mrs. Willis directly, without an intimation of any claim to having paid the principal of the bond, until August, 1902, when Mr. Gray was in his last illness, and an instalment of interest became due which Gorrell failed to pay, whereupon Mrs. Willis, through her nephew, wrote to Gorrell, requesting a remittance of the interest. To this request Gorrell made the response: "To my surprise a note for amount due her was placed in bank by Mr. G. D. Gray, and was paid by me at maturity, 5th of August. So Mrs. Willis will write him, although he is too ill to attend to business, and it is doubtful if he lives. Yours truly,

(Signed) "J. B. GORRELL."

This was the first intimation which Mrs. Willis had of any claim on the part of any one that the debt was paid, or its status in any way changed except by the payment of interest, and Mr. Gray was then, as stated by Gorrell in his note, too ill to attend to business, and he died in August, 1902, being too ill all the time to have his attention called to the matter, or to make any explanation as to the transactions between him and Gorrell touching the bond in question. Upon the receipt of the above note from Gorrell, Mrs. Willis employed counsel to investigate the facts concerning the bond she had held against Gorrell, and filed her bill in this cause setting out the attempted release of 1898; that Gorrell had on August 3, 1902, paid at the Farmers

and Merchants Bank his note for $500, payable to G. D. Gray, dated in February, 1902, at six months, which had been discounted at the bank by Gray, and which was a renewal of a note of similar description discounted originally in February, 1899, and renewed at regular intervals of six months thereafter, which Gorrell claimed to be a settlement of complainant's secured bond; that Gray had died totally insolvent; that the bond which Gray attempted to release had never been paid; denying Gray's authority to release the deed of trust securing the bond, and called upon Gorrell to produce the bond and any notes claimed by him to have been given in renewal or payment of the bond; the prayer of the bill being that Gray's release of the deed of trust securing her bond and his receipt of its payment be cancelled and annulled, and that the land conveyed by the deed of trust be subjected to the payment of the bond. To this bill Gorrell and others were made parties defendant, and the bill was taken for confessed as to all parties except Gorrell, who filed his demurrer and answer thereto; his answer setting out that "on the 3d day of February, 1900," two years after the pretended release of 1898, "the whole principal of said bond was paid to the plaintiff's attorney in cash as may be seen from an endorsement on the face of said bond made by said G. D. Gray, attorney for plaintiff." The answer then proceeds to relate that on that day (February 3, 1900), Mr. Gray had come to respondent stating that Mrs. Willis wanted her money at once, that he, Gorrell, then stated his inability to raise the money on such short notice, and that thereupon Gray departed from him, returned in a short time and suggested to him to make a note to him, Gray, for $500, which he would endorse and have discounted, and thus pay off the bond; that he did this and Gray took the note away, returning in a short time with the bond, and informed him, respondent, of the amount of the discount, which he paid to Gray in cash, and thereupon Gray marked the bond paid and delivered it to him; that from

that time until Mrs. Willis' demand for interest he heard nothing more of the matter and supposed, of course, that Gray had accounted to Mrs. Willis for the note. The answer further claims that respondent, since that time, had carried the said note in bank with Gray's endorsement, he, respondent, paying the discount at each renewal thereof until its final payment.

, Upon the hearing of the cause upon the bill, the demurrer and answer of Gorrell, and the testimony adduced by the parties, the Circuit Court overruled the demurrer, and held that the debt asserted by Mrs. Willis against Gorrell for the amount of the bond in question had been fully paid by Gorrell to G. D. Gray, as the duly authorized attorney of Mrs. Willis to collect the same; that Gorrell was discharged from further liability on account of said debt, and dismissed the plaintiff's bill, with costs to the respondent, Gorrell. This decree is before us for review upon an appeal taken by Mrs. Willis.

We have in the outset stated fully the facts as disclosed by the record, and from them it appears that the claim made by Gorrell, the appellee, in his answer, that the bond in question was marked paid and delivered to him at the time that he claims to have given Gray his note for the amount of the bond, upon which he received the money at bank, is wholly incorrect, the fact being that at that time the bond was not marked paid and delivered to appellee by Gray. When appellee obtained possession thereof is not made to appear, except that it was at a date subsequent to the release of the deed of trust by Gray in 1898, and subsequent to the execution of the note by appellee to Gray. But be this as it may, and whatever may have been the transactions between appellee and Mr. Gray, or their motives concerning the debt of appellant, the question remains whether or not appellant can be bound by these transactions and her debt rightly adjudged to have been satisfied thereby. Appellee, as the record clearly discloses, knew that the dealings of Mr. Gray with him concerning this

debt were unauthorized; otherwise it would be inexplicable that he should not only have paid the discount on the several notes given to Gray in settlement of the debt, but continued till February, 1902, to pay promptly in advance, every six months as it accrued, the interest due to appellant as though she still held the bond unpaid, and thereby concealing from her any claim whatever that he had paid the bond to her attorney. The contention of appellee that the proceeds of the original note given by him to Mr. Gray in settlement of appellant's bond were paid over by Mr. Gray to appellant, or should have been, is, therefore, absolutely inconsistent with the admitted facts in the case.

As has been remarked, when Gray notified Mr. Willis that he had taken a deed of trust in 1885 to secure the debt due to him from appellee, the debt thereafter was no longer in the hands of Mr. Gray for collection, but was treated both by the debtor and creditor as an investment, and stood thus for about seventeen years. There is not the slightest proof in the record that the relation of attorney and client was ever created between appellant and Mr. Gray, except that the bond of appellant assigned to her by her husband remained in Mr. Gray's possession, whether for safe-keeping or for what purpose we are unadvised and are not concerned. But even if the relation of attorney and client had been established as between appellant and Mr. Gray concerning the bond in question, it is well settled that an attorney having in his hands a claim for collection has no authority whatever to receive anything but money in payment thereof without previous authority obtained from his client, the owner of such claim.

In *Smith* v. *Powell,* 98 Va. 421, 36 S. E. 522, it is held, that an attorney simply to collect a debt has no authority to receive anything but money for it, and if he accepts a note for it, no subsequent dealings of his with reference to the note, without previous authority or subsequent ratification of the client, can be deemed a ratification by the client.

It is not pretended in this case that appellant had ever authorized Mr. Gray, as her attorney, to collect the debt due from appellee, and there is not a syllable of evidence in the record that she, by word or deed, consented to or ratified the acceptance by Mr. Gray from appellee of the note which he claims to have given to Mr. Gray in settlement of her debt. The transaction, set up by appellee, which he claims to have been in satisfaction of appellant's debt, had been concealed from her in the manner we have hereinbefore stated, until not only the insolvency of the attorney to whom he claims to have thus paid the debt years before, but until his fatal illness. Under these circumstances it would be unjust and inequitable, as it appears to us, to throw the loss of the debt upon appellant instead of upon appellee.

It follows that we are of opinion that the decree of the Circuit Court is erroneous, and it will, therefore, be reversed and annulled, and the cause remanded to be further proceeded with in accordance with the views herein expressed.

*Reversed.*