IN THE

# SUPREME COURT

OF THE

## STATE OF IDAHO.

---

(May 8, 1912.)

T. G. KAESEMEYER, Respondent, v. W. P. SMITH, Defendant; EXCHANGE NATIONAL BANK OF COEUR D'ALENE, IDAHO, Garnishee Defendant; A. B. CARSCALLEN and E. J. CARSCALLEN, Copartners Doing Business Under the Name and Style of CARSCALLEN BROTHERS, and A. F. DUPLISEA, Intervenors, Appellants.

[123 Pac. 943.]

BANK CHECKS—DEPOSITS—GENERAL—SPECIAL—SECRET AGREEMENT OF DEPOSITOR AND BANKER.

(Syllabus by the court.)

1. A check given by a depositor upon a bank is a mere direction to the bank to pay a certain sum of money to the person named therein, and by the giving of such check the amount of the same does not become the property of the payee of the check, nor place such fund beyond the control of the depositor.

2. Under the provisions of sec. 3646, Rev. Codes, "A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder unless and until it accepts or certifies the check."

3. This section of the statute provides that the issuing of a check in no way transfers or assigns to the payee of such check the fund or any part of the fund of the depositor who draws the check, and that the bank is in no way liable to the holder of such check until the bank accepts or certifies the same.

4. Where S. deposits in the Exchange National Bank the sum of $1,500 and thereafter personally demands and receives payment of $700 of said sum, and at the time such payment is made furnishes the bank with a statement of checks issued by S. against the balance of the deposit fund, and at such time makes no arrangement with the bank that such balance is to be a special

deposit, and the bank does not accept such deposit as a special deposit, such deposit remains a general deposit and is subject to attachment.

5. Where S. issues a check against his general account on deposit at a bank, such check is not an equitable assignment of the fund standing to the credit of S. in the bank, notwithstanding the fact that S. made the deposit for the purpose of paying such check, and a garnishment of the bank in a suit against S. before such check is presented creates a lien on the deposit superior to that of the payee of the check.

6. Where C. commences an action against S. upon a check issued by S. to C. against a deposit in a bank, and causes attachment to be issued against S., C. is not estopped from intervening and defending in an action wherein another creditor of S. is seeking to subject the deposit of S. in said bank, against which such check is drawn, to the payment of such creditor's claim.

APPEAL from the District Court of the Eighth Judicial District for Kootenai County. Hon. R. N. Dunn, Judge.

Action for debt. Judgment for plaintiff. Intervenors appeal. *Affirmed.*

Reed & Boughton, and Elder & Elder, for Appellants.

"In order to constitute a binding election, the party must, at the time the election is alleged to have been made, have knowledge of the facts from which the coexisting inconsistent remedial rights arise." (15 Cyc. 261; *Louisville & N. W. Co. v. Bernheim,* 113 Ala. 489, 21 South. 405; *Bierce v. Hutchins,* 205 U. S. 340, 27 Sup. Ct. 524, 51 L. ed. 828.)

When money is deposited with a bank with directions to pay out in a certain manner or to certain persons, the bank, if it accepts the deposit at all, must pay it out according to the special direction, and if it applies it, or pays it out in any other manner, the bank is liable. (1 Morse on Banks and Banking, sec. 208; *Judy v. Farmers & Traders' Bank,* 81 Mo. 404; *Union Nat. Bank v. Dumond,* 33 Ill. App. 102; *Dumond v. Merchants Nat. Bank,* 33 Ill. App. 95; *Hummel v. First Nat. Bank,* 2 Colo. App. 571, 32 Pac. 72.)

"In using deposits made for the purpose of having them applied for a particular purpose the bank acts as the agent

of the depositor, and if it fails to apply it or misapply it, it can be recovered as a trust deposit." (5 Cyc. 515; *Heath v. Safe Co.*, 184 Mass. 481, 69 N. E. 215; *Fort v. National Bank*, 82 S. C. 427, 64 S. E. 405; *First Nat. Bank v. Barger* (Ky.), 115 S. W. 726; 13 Current Law, 420; 15 Current Law, 467, note.)

C. H. Potts, for Respondent.

A check does not assign to the holder any part of the funds of the drawer in the bank, unless and until it is certified or accepted in writing. (*B. & O. R. Co. v. First Nat. Bank*, 102 Va. 753, 47 S. E. 837; *Reviere v. Chambliss*, 120 Ga. 714, 48 S. E. 122; *Poland v. Love*, 164 Fed. 186, 91 C. C. A. 466; *Imboden v. Perrie*, 13 Lea (Tenn.), 504; *Jones v. Glover*, 93 Ga. 484, 21 S. E. 50.)

"To constitute an equitable assignment of fund, the assignor must not retain any control over it—any authority to collect, or any power of revocation." (*Christmas v. Russell*, 14 Wall. (U. S.) 69, 20 L. ed. 762; *Van Buskirk v. State Bank*, 35 Colo. 142, 117 Am. St. 182, 83 Pac. 778.)

This deposit of $1,500 became the property of the Exchange National Bank as soon as it was made in the manner disclosed by the evidence, and it was no longer under the control of Smith as a separate fund. (*Pullen v. Placer County Bank*, 138 Cal. 169, 94 Am. St. 19, 66 Pac. 740, 71 Pac. 83.)

The defendant Smith could not make a secret arrangement with the bank that the check of intervenors should be paid to the exclusion of other check-holders or creditors. (*Gage Hotel Co. v. Union Nat. Bank*, 171 Ill. 531, 63 Am. St. 270, 49 N. E. 420, 39 L. R. A. 479.)

"A deposit is general unless the depositor makes it special or deposits it expressly in some particular capacity." (*Ward v. Johnson*, 95 Ill. 215; *Wetherell v. O'Brien*, 140 Ill. 146, 33 Am. St. 221, 29 N. E. 904; *Mutual etc. Co. v. Jacobs*, 141 Ill. 261, 33 Am. St. 302, 31 N. E. 414, 16 L. R. A. 516; *McLain v. Wallace*, 103 Ind. 562, 5 N. E. 911; *Keene v. Collier*, 58 Ky. (Met.) 415; *Matthews, Finley & Co. v. Their Creditors*,

10 La. Ann. 342; *McGregor v. Battle,* 128 Ga. 577, 58 S. E. 28, 13 L. R. A., N. S., 185; *State v. Dickerson,* 71 Kan. 769, 81 Pac. 497.)

"Knowledge that checks have been drawn does not make it obligatory upon the bank to retain the deposit to meet them." (*Attorney General v. Cont. Ins. Co.,* 71 N. Y. 325, 27 Am. Rep. 55.)

"A creditor by attaching property belonging to his debtor is estopped to afterward assert title in himself upon an interplea." (4 Cyc. 799, citing *Boettger v. Roohling,* 74 Mo. App. 257; 15 Cyc. 257; *Missouri Pac. Ry. Co. v. Henrie,* 63 Kan. 330, 65 Pac. 665; *Bank of Santa Fe v. Commissioners,* 61 Kan. 785, 60 Pac. 1062; *Thompson v. Howard,* 31 Mich. 309; *National Bank of Illinois v. First Nat. Bank,* 57 Kan. 115, 45 Pac. 79; *Moline Plow Co. v. Rodgers,* 53 Kan. 743, 42 Am. St. 317, 37 Pac. 111; *Terry v. Munger,* 121 N. Y. 161, 24 N. E. 272, 8 L. R. A. 216; *Crawford v. Nolan,* 70 Iowa, 97, 30 N. W. 32; *Clausen v. Head,* 110 Wis. 405, 84 Am. St. 933, 85 N. W. 1028; *Bach v. Tuch,* 126 N. Y. 53, 26 N. E. 1019.)

STEWART, C. J.—Kaesemeyer, the respondent, commenced an action against the defendant, W. P. Smith, in the district court of Kootenai county on the 1st of February, 1910, to recover the sum of $700 with interest. A writ of attachment was issued in said cause and notice of garnishment was served upon the Exchange National Bank of Coeur d'Alene, Idaho. This notice of garnishment was served upon the bank at five minutes after 1 o'clock on the 1st of February, 1910. On February 3d the bank made and filed its answer to the interrogatories attached to the notice of garnishment.

On the afternoon of February 1, 1910, at about 5 o'clock, and after Kaesemeyer, the respondent, had filed his complaint in this action and written notice of attachment had issued in said cause and notice of garnishment had been served upon the Exchange National Bank, the appellants, Carscallen Brothers, filed a complaint against the defendant, W. P. Smith, to recover upon a check for the sum of $562.56

upon the Exchange National Bank, given and delivered by Smith to Carscallen Brothers, and caused a writ of attachment to be issued and to be levied upon the funds of Smith in the Exchange National Bank. Thereafter Carscallen Brothers filed a petition in intervention in this cause and were permitted to intervene, and alleged that W. P. Smith was indebted to said Carscallen Brothers upon a check for the sum of $562.52 given them by Smith upon the Exchange National Bank on the 1st of February, 1910, and such petition in intervention alleged that such check was given to appellants by Smith, and that at the time the same was given said Smith represented to Carscallen Brothers that he would make a special deposit to take up said check, and stated he would notify the bank of the issuing of said check and would leave money with the bank for the purpose of paying said check; and that thereafter he deposited with the Exchange National Bank the sum of $767 and notified the bank that said sum of money was deposited for the purpose of covering and paying the checks mentioned in a statement handed to the bank at the time, and directed the Exchange National Bank to pay said checks as they were presented, and that the sum so deposited was the exact sum of money necessary to pay the checks mentioned in said statement, and that said bank accepted said deposit as a special deposit and promised and agreed to pay said checks as they would be presented, and that said Smith deposited said sum of money for the purpose of paying said checks and for no other purpose, and that the bank accepted said deposit for said purpose and for no other.

The cause was tried to the court and findings of fact and conclusions of law were made by the trial court and judgment rendered in favor of Kaesemeyer for the amount sued for, and that the Exchange National Bank of Coeur d'Alene, garnishee, pay to the plaintiff, Kaesemeyer, $725, held by them on deposit for the defendant and attached in said action, and that A. B. Carscallen and E. J. Carscallen, doing business under the name of Carscallen Brothers and A. F. Duplisea, take nothing by their amended complaint in intervention herein. From this judgment this appeal was taken.

A great many errors are assigned by appellants, but all of these are included in the general and controlling question, "whether the amount on deposit with the Exchange National Bank at. the time of service of the writ of attachment · on February 1, 1910, at 1 o'clock, P. M., was the property of the defendant, W. P. Smith."

The court found in its findings of fact:

"That said Exchange National Bank in answer to interrogatories under said garnishment and attachment filed an answer under oath, in words and figures as follows, to wit:

"Q. 1. At the time of the service of the garnishment, had you in your possession or under your control any property, money or effects of the defendant? If so, state what property, how much, and° of what value, and what money or effects. A. We had in our possession and control $725.36 on deposit to the credit of defendant under the conditions hereinafter stated.

"Q. 2. At the time of the service of the garnishment, did you owe the defendant any money, or do you owe him any now? If so, state how much, on what account, and when did the same become due; if not due, when will it become due. A. The defendant placed with our bank $1,529.89, and on the 1st day of February, 1910, and prior to the service of the writ of attachment, withdrew the sum of $762.36 and left with us a statement of checks issued against the balance as follows:

| | | |
|---|---|---|
| Branson & Max | #2340 | $14.25 |
| Hatfield | 2328 | 5.75 |
| Carscallen Bros. | 2339 | 562.56 |
| E. N. LaVeine | 2333 | 25.50 |
| Calquhoun Hdwe. Co. | 2330 | 19.30 |
| Whitesett & Son | 2327 | 16.00 |
| Exchange Nat. Bank | 2335 | 10.67 |
| Blackwell Lmbr. Co. | 2332 | 14.50 |
| Ezra R. Whitla | 2329 | 11.50 |
| Consumers Co. | 2326 | 67.65 |
| O'Rourke | | 19.85. |

"The defendant stated that said deposit was left with us for the purpose of paying said checks, and your garnishee defendant alleges that by reason thereof said accounts were assigned to said persons in said amounts; and your garnishee defendant further states and shows that the checks of $14.25 to Branson & Max, $16.00 to Whiteset & Son, $10.57 to garnishee defendant and $11.50 to Ezra R. Whitla were paid prior to the service of said writ of attachment, and we now have in our possession the balance of said $767.53 less the amounts paid upon said checks as herein stated, together with a small additional sum making a balance of $725.36 held by us belonging to defendant."

This return to interrogatories was signed by William Dollar, president of the Exchange National Bank, garnishee defendant in the action.

The court finds that on the 1st day of February the defendant, Smith, was indebted to Carscallen Brothers in the sum of $200 and to A. F. Duplisea in the sum of $362.56 on two promissory notes, and for the purpose of taking up and paying said notes W. P. Smith, on the 1st day of February, issued to Carscallen Brothers said check in words and figures as follows:

"Pay to the order of Carscallen Bros. $562.56 Five Hundred & Sixty Two and 56/100 Dollars.

"To Exchange National Bank, Coeur d'Alene, Idaho.

"W. P. SMITH."

That this check was delivered to Carscallen Brothers during the morning of February 1, 1910, and at the time of delivery of said check Smith exhibited to Carscallen a check for the sum of $1,500 and stated that he would deposit said check in the Exchange National Bank of Coeur d'Alene.

The court found that during the forenoon of said day, and after Smith had delivered the check to Carscallen Brothers, Smith deposited in the Exchange National Bank at Coeur d'Alene a check for the sum of $1,500; that at the time of making said deposit Smith had a check account with said bank; that the deposit was accompanied by an ordinary deposit slip and the amount thereof was entered in the pass-

book of Smith by the cashier of the bank, and was. credited to Smith on the books of the bank on his general checking account; that the deposit was made with V. W. Platt, the cashier; that Smith did not request or direct the bank or any officer thereof at the time of making the deposit to treat the same as a special deposit, and did not notify the bank or any officer thereof that he intended to make the deposit as a special deposit, or that the said check was deposited in the bank for any special purpose; that the amount of the deposit was mingled with the funds and assets of the bank.

The court finds that after Smith had deposited said check he returned to the bank and withdrew therefrom on his general checking account the sum of $763.36, and left a balance on deposit in his general checking account of $767.53.

The court finds that after Smith had withdrawn said sum from his account he went to William Dollar, the president of the bank, and exhibited to him a statement of checks which he had issued against the balance of his checking account, which statement included the check of intervenors, given in payment of said promissory notes, and told said Dollar that the checks mentioned in said statement had been drawn against his account.

The court finds that about 1 o'clock the writ of attachment issued in the case of *Kaesemeyer v. Smith* was levied upon the funds of Smith in said bank by service of notice of garnishment and attachment; that at the time of the levying of said writ of attachment the defendant Smith had on deposit with said bank the sum of $725.36.

The court finds that after the levying of the writ of attachment the check given by Smith to Carscallen Brothers was presented to said Exchange National Bank and payment refused on the ground that the deposit of Smith had been attached at the instance of the plaintiff.

The court finds that at the time of the levying of said writ of attachment the defendant Smith had on general deposit the sum of $725.36.

The court finds that the defendant Smith did not deposit with the bank the sum of $767.53 on the 1st day of February,

1910, and did not notify the bank that said sum of money was deposited for the purpose of covering and paying the checks mentioned in exhibit "A" attached to the plaintiff's complaint, and the bank did not accept a deposit of said amount or any deposit as a special deposit, and Smith did not deposit said sum for the purpose of paying said checks and for no other purpose, and the said bank did not accept said deposit for the said purpose and for no other purpose, and the said W. P. Smith did not deposit, transfer or deliver said sum of money to said bank in trust for the use and benefit of the check-holders mentioned in exhibit "A."

The court finds that the sum of $562.56 was not assigned to the intervenors, Carscallen Brothers, prior to the levy of the writ of attachment, and said sum was not and did not become the property of the intervenors.

The court finds that subsequent to the filing of the complaint in this action and the service of the writ of attachment, and about 5 o'clock on the 1st day of February, 1910, the intervenors, Carscallen Brothers, filed their complaint in the district court against Smith to recover upon a check for $562.56.

The court finds that in the action of Carscallen Brothers against Smith the intervenors knew at the time of the filing of said suit and the issuing of the writ that the only funds in the hands of the garnishee defendant at the time was the money attached by the plaintiff. The findings thus made by the trial court support the conclusions of law and the judgment, and the question arises whether the evidence supports the findings.

E. J. Carscallen, one of the appellants, testifies that Smith came to his office on the 1st day of February, 1910, about 10 or 11 o'clock, and said he wanted to settle up, and that he gave a check for $562.56 to pay a note of $200 due Carscallen Brothers, and a note of $362.56 due A. F. Duplisea, and which had been left by him with Carscallen Brothers, and that Smith told Carscallen not to present the check until afternoon, and said: "I am making a deposit to cover this and several other checks"; that he drew a check from his pocket that he

was going to deposit and showed the check. Carscallen says:
"I gave the check to Miss Peterson, who went to dinner, and
on her way back stopped at the bank and presented the check
and it was not paid. I then took the check to the bank and
presented it and it was refused, and the bank said that the
account had been attached." On cross-examination, in answer
to a question, the witness stated that when Smith delivered
the check he said he did not have sufficient funds in the bank
at that time to take it up, and that he was making a special
deposit to cover this check and several others.

W. P. Smith testifies by deposition and in answer to the
question, "What, if anything, was said or done by you at that
time" (the time he called at Carscallen's office), replies as
follows: "I gave Carscallen a check for $562.56 on the Ex-
change National Bank of Coeur d'Alene, Idaho, and took up
note of Carscallen Bros. and A. F. Duplisea, and at the same
time I told him that I would make a deposit in the Exchange
Nat'l. Bank to pay the check, and that I would notify the
bank, that I had issued the check on account." The witness
also testifies that at the time he had a checking account with
the bank, and that he had at that time on deposit $29.98,
and on February 1st he made a deposit of $1,500 at 11:15
A. M.; that this deposit was made with William Dollar; that
he drew out after the deposit $762.45, and with reference to
the balance on deposit he testifies: "I left with the Exchange
National Bank a list of checks which I had drawn against the
balance of the money in the bank, and also gave them the
number of each check, the amount and name, to whom drawn,
and at the same time told Mr. Dollar that the money was left
with him to pay those particular checks; the following is a
list of those checks as I gave them to Mr. Dollar." Then fol-
lows a description of the checks the same as those set forth in
finding 9 of the court and contained in the answer of the bank
to the interrogatories attached to the service of the garnish-
ment. The witness Smith then testified in answer to the ques-
tion, "Did the bank accept the money and agree to pay out as
directed?" "Yes." He also stated that Dollar told him
that he would pay the checks as they were presented, and

that he did not attempt after that time to draw out any por-
tion of the balance on deposit. He also testified that the
deposit made by him on February 1, 1910, was entered on his
pass-book the same as all previous deposits made by him at
said bank.

William Dollar testified that W. P. Smith had an account
with the bank up to the 1st day of February, 1910, an open
checking account; that he made a deposit on the first day of
February with the cashier, Mr. Platt, and was given a de-
posit slip receipt for $1,500; the deposit slip was entered at
the time of the deposit. When the deposit was received by
the bank from Smith it was placed to Smith's credit, and the
deposit slip represents the usual method of handling deposits.
After this deposit was made and later in the day Smith came
back to the bank and had a list of figures with him aggregat-
ing some $700, and he footed them up and he said to him he
had checks outstanding for that amount, and he drew a check
for the balance of his account and wanted to leave enough
money to cover them, drawing a check for the balance, and
went out. He was then asked these questions: "Did he at
that time, or any time, ask you to make a special deposit of
the balance left in the bank?" A. "No, sir." Q. "Was
a special deposit made of it?" A. "No, sir." Q. "I will
ask you this question: whether or not anything was said by
Smith to you at that time, or any time, asking you to treat
or make a special deposit of the balance left with you in the
bank?" A. "No, sir." He was then asked whether this
deposit was treated in any manner other than that of a general
deposit or different from ordinary general deposits, and he
answered: "We treated it in the same manner as we treated
general deposits until it was attached and then we removed it
to a temporary deposit to protect . . . . the attachment."
The witness was then asked: "What is the fact as to whether
or not the depositor, Mr. Smith, at any time prior to the at-
tachment, lost control over that fund in your hands?"
A. "We would have paid any check of Mr. Smith properly
signed up to the time it was attached. We had no instructions
to do otherwise, although he exhibited a list that he had of

checks outstanding, but he did not say, 'Protect these checks in preference to any other checks.' ''

This is substantially the entire testimony given at the trial bearing upon the character of the deposit made by Smith in the Exchange National Bank, and what was said at the time the deposit was made and thereafter.

Under the evidence we are satisfied that the findings of the trial court are supported by the evidence.

The court finds, and we think the evidence supports the finding, that after the $700 had been withdrawn from the bank by Smith, Smith did not notify the bank that the remainder of the sum on deposit was there for the sole and only purpose of paying the checks mentioned in the statement furnished, and that the bank did not accept such deposit for that specific purpose, and that said sum was not transferred from a general to a special deposit for the use and benefit of the check-holders mentioned in the statement.

The check given to Carscallen was a mere direction to the bank to pay a certain sum of money to the person named therein.  By the giving of such check the amount of the same did not become the property of the payee of the check nor place such fund beyond the control of Smith.  Until the check was presented to the bank, Smith could have countermanded its payment and could have given different directions for the disposition of the money remaining in the bank to his credit, and could even have personally demanded payment, and the bank could have been required to pay the same, and by so doing its indebtedness to Smith would have been discharged.  (*Carr v. National Security Bank,* 107 Mass. 45, 9 Am. Rep. 6; *Heath v. New Bedford Safe Deposit Co.,* 184 Mass. 481, 69 N. E. 215; *Pullen v. Placer County Bank,* 138 Cal. 169, 94 Am. St. 58, 71 Pac. 83.)

The bank had no authority to issue a check in Smith's name for said sum, and it had no claim against Smith which could have been charged against said amount, and had no right to alter the character of the relation between Smith and the bank.  The debt of the bank to Smith as a depositor still existed and continued to exist, and the bank's liability could

be discharged only by the payment of the debt, and so far as the record is concerned the bank is making no claim to said sum.

Sec. 3646, Rev. Codes, a part of what is known as the negotiable instrument law, provides as follows: "A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check." This section of the statute clearly provides that the issuing of the check in no way transfers or assigns to the payee of such check the fund or any part of the fund of the depositor who draws the check, and that the bank is in no way liable to the holder of such check until the bank accepts or certifies the same. (*Baltimore & O. R. Co. v. First Nat. Bank,* 102 Va. 752, 47 S. E. 837; *Reviere v. Chambliss,* 120 Ga. 714, 48 S. E. 122; *Poland v. Love,* 164 Fed. 186, 91 C. C. A. 466.)

In discussing this question, the supreme court of Tennessee, in the case of *Imboden v. Perrie and Wife,* 81 Tenn. (13 Lea) 504, quotes with approval from the case of *Attorney General v. Continental Life Ins. Co.,* 71 N. Y. 325, 27 Am. Rep. 55: "Banks are debtors to their customers for the amount of deposits. A check is a request of the customer to pay the whole or a portion of such indebtedness to the bearer or to the order of the payee. Unless presented and accepted it is inchoate; it vests no title or interest, legal or equitable, in the payee to the fund. Before acceptance, the drawer may withdraw his deposit; the bank owes no duty to the holder of a check until it is presented for payment. Knowledge that checks have been drawn does not render it obligatory upon the bank to retain the deposit to meet them. These rules are indispensable to the safe transaction of commercial business. Any other rule would produce confusion and involve banking institutions and all depositaries of moneys in responsibilities to conflicting claimants, which, while producing great embarrassments, would serve no beneficial purpose."

In discussing the question of equitable assignment, the supreme court of Georgia, in the case of *Jones v. Glover,* 93 Ga.

484, 21 S. E. 50, held: "In order to defeat a garnishment on the ground that the debtor had made an equitable assignment of the fund before the garnishment was served, facts or circumstances must appear from which it could rightly be inferred by a jury both that a complete equity had arisen between the assignor and the assignee which would support an assignment, and that these two parties contemplated an immediate change of ownership with respect to the particular fund in question."

When Smith issued the check to Carscallen Brothers he did not have sufficient funds in the bank to pay such check. He thereafter made a deposit of $1,500, which was in excess of the Carscallen check, and he told Carscallen, to whom the check was issued, that a deposit would be made to pay such check. This deposit of $1,500 was a general deposit. There can be no question whatever about that. The deposit was made upon the general account of Smith; it was subject to his withdrawal; he could have personally demanded payment of the same at any time, either in person or by check. He sought in this instance to personally demand the payment of about $700, and at that time, as the court finds, and we think the evidence supports such finding, the depositor Smith told Dollar that he desired certain checks to be paid out of that deposit, and furnished the bank with a statement of such checks. No alteration, however, was made of his deposit; it still remained a debt of the bank to Smith; it was still subject to withdrawal, either personally or by check.

Kaesemeyer knew nothing about any arrangement between Smith, Carscallen, and the bank with reference to the nature of the deposit at the time he commenced his action, or at the time of the deposit. He caused the attachment to issue and garnishment to be served upon the bank at a time when the bank owed Smith a sum of money, and the bank so answered. At this time Carscallen, although holding a check of Smith on the bank, had not as yet presented the check at the bank for payment. There had been no assignment as yet under the statute of the fund standing to the credit of Smith in the bank upon its books, or in fact by separation from the general funds

of the bank. The mere fact that Smith gave a check on an open bank account subject to check does not amount to an equitable assignment, notwithstanding the fact that he made a deposit to cover the particular check, and the garnishment of the bank before such check has been presented creates a lien on the deposit superior to that of the payee of the check. (*Carr v. National Security Bank,* 107 Mass. 45, 9 Am. Rep. 6; *Heath v. New Bedford Safe Deposit Co.,* 184 Mass. 481, 69 N. E. 215.)

In determining whether the fund in this case was on general deposit or whether it was on special deposit, or a trust fund, we must not overlook the fact that the controversy in this case is between two creditors of a debtor who is a depositor, and that it is not a contest between the depositor and the bank. Kaesemeyer, the respondent, was a creditor of Smith in the same manner as Carscallen. Smith owed both these parties, and both of these parties were seeking to reach a fund belonging to Smith. The respondent sought to reach this fund by action and attachment of a sum of money deposited in Smith's name in the bank. The appellant Carscallen sought to reach this fund by reason of an assignment, either actual or equitable, in the giving of a check.

To support the position of appellant in this case would mean that a depositor could make a secret arrangement with a bank when making a deposit, as to the payment of checks issued against such deposit, and require a person receiving a check to ascertain at the bank whether a deposit was a special or general deposit, and whether the check received was to be paid from a special or general deposit, and this would prevent the bank from paying checks in the order in which they were presented. This would destroy the very fundamental principles of banking and would place the bank under obligations contravening the contemplated liability of the bank to a depositor at the time the deposit was made. In the present case a deposit was made in the name of Smith at the bank. It was subject to his check. If the plaintiff had presented a check signed by Smith instead of attaching the account of Smith, the bank would have been obliged to pay

the check, as the bank's contract was to pay the checks of Smith in the order of their presentation and not in the order in which they were issued, and the priority of right to the fund against which the check is drawn is determined by the order of presentation. (*Gage Hotel Co. v. Union Nat. Bank,* 171 Ill. 531, 63 Am. St. 270, 49 N. E. 420, 39 L. R. A. 479.)

It is apparent that there was no equitable assignment created by reason of the giving of the check by Smith to Carscallen. At the time Smith did not have on deposit in the bank funds sufficient to pay the check. There could have been no immediate assignment because there was no fund to assign. The deposit was made afterward; there was no change of possession in a fund for there was no fund in existence, and there was no fund which could be impressed with any equity in favor of the assignee. Carscallen parted with nothing of value. The check was given and received in payment of a debt. The appellants were in exactly the same position as the plaintiff was in. They were both creditors of Smith. Smith had a desire apparently to pay the appellants and evade paying the plaintiff, and perhaps would have succeeded had not the plaintiff attached the fund before the check was paid.

The trial court, in conclusion of law 4, finds that by reason of the acts of Carscallen Brothers in commencing an action against Smith and causing an attachment to be issued, and the Exchange National Bank having been garnisheed in said action, they elected a remedy inconsistent with the relief prayed for by the amended complaint in intervention, and that by reason of the proceedings taken in said action, the intervenors are estopped from claiming any part of the funds attached by the plaintiffs in this action and in the hands of the garnishee defendant, the Exchange National Bank.

Appellant urges that this conclusion of law is erroneous. It is true the record shows that Carscallen Brothers commenced an action against Smith prior to the time they made application to intervene in this case, but that fact did not prevent or estop them from interfering in this case in defense of a fund which Carscallen Brothers claimed had been equitably assigned to them by Smith and which was in litiga-

tion in this action.   They had a perfect right to appear in this
cause and defend the title to the fund in controversy, and
were interested in said controversy to the extent of their
ability to defeat the prior right of Kaesemeyer to said fund
by reason of his attachment.   This finding, however, becomes
immaterial in so far as the judgment of the trial court is con-
cerned, in view of the conclusion of this court as to the cor-
rectness of the judgment rendered below, as the judgment was
in favor of plaintiff and against Carscallen as to the priority
of right to the fund in controversy.

Judgment is *affirmed.*   Costs awarded to respondent.

Ailshie, J., concurs.

SULLIVAN, J., Concurring.—I concur in the conclusion
reached by my associates on one ground and one ground only,
that there is a conflict in the evidence as to whether there was
an equitable assignment of the fund garnisheed prior to the
garnishment.