MARX et al. v. MADDREY.

Civ. No. 328.

United States District Court
E. D. North Carolina, Wilson Division.

Aug. 13, 1952.

Lassiter, Moore & Van Allen, Charlotte, N. C., for plaintiffs.

John Kerr, Jr., Warrenton, N. C., for defendant.

GILLIAM, District Judge.

On July 15, 1952, J. W. Crew, Jr., filed application for leave to intervene under the provisions of Rule 24(a), Subsections (2) and (3), of the Rules of Civil Procedure, 28 U.S.C.A., together with motion to set aside an order entered on June 23, 1952.

In January, 1951, a judgment in this cause for $40,152.24 was entered against the defendant. D.C., 94 F.Supp. 784. Execution was issued and thereafter, on January 18, 1952, a court order requiring the Farmers Bank of Seaboard to pay over all money belonging to H. C. Maddrey was served on the bank. At the time this order was served there was on deposit in the bank $10,041.04 to the credit of "Maddrey Cotton Company", and, as plaintiff claimed that this account was in fact the account of H. C. Maddrey, the bank transferred it on its books to the credit of the United States Marshal, subject to the further orders of the Court.

On February 29, 1952, the plaintiffs filed a petition with supporting affidavit, under N.C.G.S. § 1–360, for an order requiring the defendant, Maddrey Cotton Company, and the Farmers Bank of Seaboard, to appear and answer concerning the bank account standing in the name of Maddrey Cotton Company in said bank. In pursuance of an order issued and served on the parties, H. C. Maddrey and H. B. Whitley, Vice President of the Farmers Bank of Seaboard, appeared before the Court on June 11, 1952; no person claiming to represent Maddrey Cotton Company appeared, though Wayland Maddrey, who H. C. Maddrey asserted at the hearing was the sole owner, was duly notified of the hearing.

Evidence was taken and the Court having found thereon that the account in question was in reality that of H. C. Maddrey, the defendant, on June 23, 1952 an order was entered requiring the bank to pay over the balance to the Clerk of this Court, and providing that in turn the funds should be paid over to plaintiffs for credit on the judgment, in the event no appeal was perfected, otherwise according to the further order of the Court. Notice of appeal was filed within the time allowed, but the appeal was not perfected as required by the Rules, and the money is now in the Registry of the Court, subject to a decision on the application and motion under consideration. This application alleges that the fund in question to the extent of $9,972.67 should be paid to applicant, because he had advanced this amount to pay certain checks drawn by Maddrey Cotton Company prior to the order of January 18, 1952, which

were not and have not been paid by the bank on account of the Court's order.

The facts with reference to the Crew claim, as alleged and established by the evidence taken on June 12, 1952, are substantially these: Prior to the order entered on January 18, 1952, requiring the bank to pay over all money in its hands belonging to H. C. Maddrey, to wit, on January 11, 1952, the Maddrey Cotton Company had issued three checks against its account in said bank in payment for cotton purchased, one for $8,616.80, one for $908.97, and a third for $446.90; also, prior to said order of January 18, 1952, to wit, on or about January 12, 1952, the cotton for which the three checks were issued in payment was sold for an amount in excess of the aggregate of the three checks so issued, and this amount on the same date was entered as a deposit to the credit of Maddrey Cotton Company with Farmers Bank of Seaboard. The checks were held until after the order of January 18, 1952, and when presented payment was refused because at that time, by reason of the transfer to the credit of the Marshal, there was no balance to the credit of the drawer.

Thereafter, and prior to entry of the order of June 23, 1952, ordering the full amount on deposit to the credit of Maddrey Cotton Company in said bank transferred to the Clerk of this Court for credit on judgment against H. C. Maddrey, H. C. Maddrey borrowed $10,000 from Crew with which to pay the three checks, and upon such payment the checks were delivered to Crew who now holds them. A note in evidence of the indebtedness was executed by Maddrey, and this note states: "This note is secured by three checks issued by Maddrey Cotton Company".

■ Inasmuch as the fund to which the applicant lays claim is still in the custody of the Court, it seems that the application under Rule 24A is timely, and as applicant is so situated as to be adversely affected by "a distribution or other disposition" of such fund, it appears that applicant should be permitted to intervene, provided upon his allegations and the facts established there is prima facie merit in his claim.

■ It may be questioned that plaintiff acquired any lien upon or right to the deposit under the execution, and as a result of the order of January 18, 1952, but there can be little doubt that a lien on the deposit in favor of plaintiffs was created by the order of June 23, 1952, ordering the fund paid over to the Clerk for later application to the judgment. The first assertion of any claim by Crew came on July 15, 1952, when he filed his application for leave to intervene.

■ It seems upon the face of it that it would be unjust and inequitable to permit the plaintiffs to take and hold the deposit which was created by the sale of the cotton for which the outstanding and unpaid checks were issued in payment, but it seems that probably the law is such that this must be the case. It is not infrequent that such situations occur where payments by check are accepted. Crew's position is no stronger than would be the position of the payees had they not been paid, so it seems pertinent to inquire what were the rights of the payees at the time payment of the checks was refused, and thereafter. They had no cause of action against the bank, in view of general principles and N.C.G.S. § 25-134, which provides: "A bill of itself does not operate as an assignment of the funds in the hands of the drawee available for the payment thereof, and the drawee is not liable on the bill unless and until he accepts the same."

■ The payees, of course, had a cause of action against the drawer of the checks when payment of them was refused by the bank, and the drawer had a good cause of action against the drawee bank, provided the bank failed to apply the deposit in accord with the rights of the parties. So arises the question as to whether a right to the deposit superior to that of the payees of the checks was acquired by the plaintiffs by reason of the execution under the judgment and the subsequent proceedings prior to the filing of Crew's application.

■ Banks, 7 Am.Jur. 383, Sec. 532: "Under the Uniform Negotiable Instruments Act * * * the rule now is that a

check, of itself, does not operate as an assignment of any part of the funds to the credit of the drawer with the bank * * * According to this rule, there is no privity of contract between a bank and the holder of a check given by a depositor until such check is accepted or certified; hence the holder has no right of action against the drawee by virtue merely of the check itself. In case of nonpayment, the recourse of the holder is against the drawer and endorser, if any. The drawer alone can bring suit to recover the funds against which check was drawn, and ordinarily he only can maintain an action for failure to pay on presentment * * * The rights of the holder of a check, under this view, are not superior to those of an attaching creditor, receiver, assignee for creditors, or administrator or executor of a drawer of a check or draft, where such check is not presented for payment or acceptance until after the attachment or insolvency or death of the maker.

 "On the other hand, prior to the adoption of the Uniform Negotiable Instruments Act, a minority of the courts followed the rule that the drawing and delivery of a check upon a fund in the bank was in effect or substance an assignment to the holder of the check of so much of the fund as the check called for. The courts which followed this view held that the holder would be preferred to the drawer or any subsequent claimant, whether by the assignment of the drawer or by legal process served upon the drawee. Accordingly, under this doctrine it was held that the holder of a check drawn and delivered before the noticing of the garnishment, although not presented until after the attachment thereof, was entitled to priority over the garnishing creditor * * *." (Sec. 534, p. 386) "Although there are a few cases apparently to the contrary, the rule now generally adopted is that under sections of the Uniform Negotiable Instruments Act providing in effect that a check or draft, of itself, does not operate as an assignment of the funds in the hands of the drawee available for the payment thereof, an attaching creditor * * * has a right to the funds drawn upon which is superior to that of the payee or holder, where such check or draft is not presented for acceptance or payment until after the attachment * * * unless such check or draft, together with other evidence, is held by a court of equity to show an assignment in fact. It may be stated as a corollary, therefore, that the clear weight of authority supports the view that the provisions of the Uniform Negotiable Instruments Act negative the character of a check or draft as an assignment, legal or equitable, not only as between the holder and drawee, but also as between the holder and persons who derive the rights from the drawer after the delivery, but before presentment to the drawee."

In Kaesemeyer v. Smith, 22 Idaho 1, 123 P. 943, 948, 43 L.R.A.,N.S., 100, it was held that the right of a creditor who attaches, under garnishee process, the bank deposit of one who drew a check upon the deposit before the attachment, which was not presented for payment until after such attachment, is superior to the right of the holder of the check so drawn, to the funds on deposit, as, under the Uniform Negotiable Instruments Law, Sec. 189, a check does not operate to assign any part of the funds in bank to the credit of the drawer, and the funds in bank, at the time of the attachment were still the property of the drawer and subject to attachment in an action against him. The Court says: "The mere fact that Smith (drawer) gave a check on an open bank account subject to check does not amount to an equitable assignment, *notwithstanding the fact that he made a deposit to cover the particular check;* and the garnishment of the bank before such check has been presented creates a lien on the deposit superior to that of the payee of the check."

 In Live Stock State Bank v. Hise, 150 Minn. 301, 185 N.W. 498, 500, it was held that a creditor who had garnished the funds upon which a draft was drawn before, but not presented for payment until after, garnishment, has a right superior to that of the holder of the draft. The gar-

nishee was a corporation doing a general livestock business and the drawer was a dealer in cattle who consigned cattle to the garnishee for sale and drew against the funds so raised. To the contention of the draft holder that the draft constituted an equitable assignment of the funds to be derived from a particular shipment of cattle, which the garnishee received and sold, the Court says: "The draft was not drawn on a particular fund, but generally against any money in the hands of the garnishee then due or owing to Hise (drawer). No such fund existed; the garnishee was not then indebted to Hise, the contrary being that Hise was the debtor to garnishee. The draft therefore created no liability on the part of the garnishee until acceptance; there was no equitable or other assignment of prospective funds to come into the garnishee's hands in the future." See note in 50 A.L.R. at page 403. The mere giving of a check on an ordinary deposit account in a bank in the usual course of business does not amount to an equitable assignment even though the drawer makes a deposit expressly to cover the check. In re Interborough Consol Corp., 2 Cir., 288 F. 334; In re Hollins, 2 Cir., 215 F. 41.

It is true that there are cases to the contrary, but the above cases, it seems to me, represent the weight of authority.

■ The applicant strenuously asserts that the facts show an equitable assignment of the deposit to cover the checks, because drawn on a specific and particular account, since, as he says, the account of Maddrey Cotton Company was carried specifically and only for the purpose of meeting checks drawn in payment for cotton. This latter fact, however, does not appear. So far as appears, the deposit against which the checks were drawn was a general one and the bank was obligated to cash any check drawn against it by Maddrey Cotton Company, no matter for what purpose. Applicant in his argument makes the statement that "any check drawn on this account was for the purchase of cotton." Obviously, this is an inaccurate statement; what happened to the profits derived in the business? And how were expenses met?

■ While the giving of a check against a general deposit does not, of itself, create an assignment pro tanto of the deposit, where in addition to the check there is an agreement, written or oral, express or implied, to assign so much of the deposit as required for the payment of the check, many cases hold that the agreement operates as an assignment and is sufficient to vest in the payee a title to that portion of the deposit. Among the cases so holding is Fourth Street Bank v. Yardley, 165 U.S. 634, 17 S.Ct. 439, 41 L.Ed. 855, cited by applicant; but the facts in that case, as in others examined, differ materially from the facts in this case. A reading of the opinion in the above case will show that there was a very definite understanding that the check in question was to be paid out of the fund to the credit of the drawer with the drawee; also that, as the Court held, the drawer was estopped to take a different position on account of representations made. There the controversy was between the parties to the transaction, while here we have a third party. Nobody would question the right to payment out of the deposit of one to whom the drawer issued a check, for whatever purpose, subsequent to the issue of the three checks involved, upon the presentation of such later issued check prior to presentation of the checks issued in payment of the cotton. As the deposit was general and not set up with the bank with any understanding that the account was to be drawn upon only in payment for cotton, the bank was obligated to pay in order of presentation every check drawn by the creditor until the account became exhausted. In effect, that is what occurred. The creditor of the bank suffered a judgment to be taken against him and the judgment creditor got to the bank ahead of the creditors who held the three checks mentioned.

■ It is not contended that there was any express assignment of the account with the bank for the payment of the checks, and the facts, to my mind, do not establish an implied one. No doubt, the payees expected the checks to be paid out of the proceeds arising from sale by the

drawer, and, no doubt, the drawer expected the same, but expectation on the part of both, as I analyze the situation, falls short of implied assignment for that purpose. And even if there had been an implied agreement between the drawer and the payees, it is doubtful, perhaps, whether such agreement would defeat the rights of the plaintiffs. In 7 Am.Jur. 387, Sec. 535, is said: "Similarly, if the check is purchased from the drawer, or if an advance is made to the drawer on the faith of the check and with the understanding that it shall be a charge on the deposit, equity will enforce the agreement as against the drawer, mere volunteers, and persons charged with notice". It cannot be contended successfully that the plaintiffs are "volunteers" or that they "were charged with notice". It has been held, also, in Ballard v. Home National Bank, 91 Kan. 91, 136 P. 935, L.R.A. 1916 C, 161, that an express agreement between the drawer and drawee that the check will be paid by the drawee from the funds on deposit, will operate as an assignment even though such agreement may be unknown to the payee. I do not believe it has been held that an agreement between drawer and payee, unknown to the drawee, will operate as an assignment against third parties who are other than mere volunteers and who are not charged with notice of such agreement. We are dealing here with the rights of other creditors who happened by good fortune to get to the bank first, and who had no notice of any agreement between the drawer and the payees, if there was one, and no knowledge that the checks in question were outstanding. If the account in question had stood in the name of H. C. Maddrey, and the checks involved had been issued by him, the superior right of the judgment creditor to the deposit would be clear, in my opinion. The finding that the account in reality was that of H. C. Maddrey, and, in effect, the checks were his and drawn on his account, I believe, is sufficient to require the same conclusion.

An order is being entered denying the application of J. W. Crew, Jr. for leave to intervene and his motion to set aside the order of June 23, 1952.