## MRS. E. E. BETTIE BOWERS v. FOURTH & FIRST NATIONAL BANK, CENTRAL BRANCH.

Middle Section.  December 1, 1928.

Petition for Certiorari denied by Supreme Court, February 9, 1929.

M. P. Estes, of Nashville, and James H. Frazier, of Ashland City, for plaintiffs in error.

Louis Leftwich and Paul L. Williams, of Nashville, for defendant in error.

FAW, P. J., This is an action at law begun on October 12, 1927, in the circuit court of Davidson county, by Mrs. E. E. Bettie Bowers as plaintiff against the Fourth & First National Bank, Central Branch, by which action Mrs. Bowers sought to obtain judgment for $1000.69 which, she alleged, had been deposited by her in the defendant bank and had not been withdrawn by her or by her authority.

The bank pleaded that it did not owe the plaintiff as she alleged in her declaration, and, upon the issue thus made, the case went to trial in the circuit court before a jury, and at the close of all the evidence, the trial court, on defendant's motion, peremptorily directed the jury to return a verdict for the defendant, which was done and the suit was dismissed at the cost of the plaintiff. Plaintiff's motion for a new trial was overruled and she thereupon prayed an appeal in the nature of a writ of error to this court, which was granted by the trial court and perfected by plaintiff, and in this court plaintiff assigns as error the action of the trial court in peremptorily directing a verdict for the defendant.

For convenience, we will refer to Mrs. E. E. Bettie Bowers as plaintiff and to the bank as defendant.

The transactions which gave rise to this litigation were had between the plaintiff and the Central National Bank, a banking corporation with its situs at Nashville, Tennessee, and it is admitted on the record that after these transactions and before this action was begun, the Central National Bank was merged with the Fourth & First National Bank and thereafter conducted as the "Central Branch" of the latter bank, and that "the Fourth & First National Bank assumed all the liabilities of the Central National Bank." We will, therefore, for convenience of statement in this opinion, state the facts as though the transactions were had with the defendant bank.

In order to dispose of the assignments of error in this case, we need only state the theory of the complainant, so far as that theory is supported by any material evidence. Conflicts in the evidence were for the determination of the jury, and the court should not have directed the jury to return a verdict for defendant unless there was an entire failure of material evidence tending to support the cause of action stated in plaintiff's declaration, or a legally sufficient defense interposed by the defendant was supported by undisputed evidence.

There is evidence which, if true, shows the following facts:

Plaintiff inherited from her parents, or one of them, an undivided interest in a tract of land, which interest she sold to her brother, Joe Sanders, at the price of $1000, and received from the purchaser, in part payment ($150 having been previously advanced), a check, payable to plaintiff and drawn on defendant bank, for $850. Plaintiff endorsed this check in blank and handed it to her then husband, E. E. Bowers, to be by him deposited to plaintiff's credit in defendant bank. On June 4, 1927, E. E. Bowers carried the check to defendant's banking house and handed it, without further endorsement, to defendant's receiving teller, and it was then and there entered on the books of the bank as a deposit to the credit of "Mrs. E. E. Bettie Bowers," and a pass book was prepared by the teller, in the name of "Mrs. E. E. Bettie Bowers", showing therein the deposit of $850, and this pass book was handed by the teller to E. E. Bowers and was by the latter, on the same day, handed to his wife, the plaintiff.

Subsequently three additional deposits were credited to said account of "E. E. Bettie Bowers," as follows: On June 8, 1927, $40; on June 22, 1927, $65, and on June 23, 1927, $150. Plaintiff testified that the deposit of $40 was made by her husband; that on the day that deposit was made her husband asked her to give him her pass book in order that he might deposit $40 in the bank for her, and that he took the pass book to the bank and brought it back home to her on the same day; that the deposit of $65 on June 22, 1927, was made by plaintiff in person; that the sum of $65 thus deposited was a gift

to plaintiff from her husband; that the deposit of $150 on June 23, 1927, was made by her husband as a payment to her of that amount which she had loaned him when her brother paid her $150 as an advance on the purchase of the land sold to him as aforesaid; that when her husband made the deposit of $150, he did not have the pass book, but brought to her a "duplicate paper" which the bank had given him, and later she carried this "duplicate paper" and her pass book to the bank and the bank put the deposit of $150 on her pass book for her.

Plaintiff "left" her husband, E. E. Bowers, on July 11, 1927, (after nineteen years of married life with him), and has not lived with him since that time. They were divorced, by decree in an uncontested suit brought by the husband, before the proof was taken in this case.

Plaintiff drew a number of small checks on defendant bank between June 4, 1927, and September 26, 1927, which aggregated $104.31, and which were paid by the defendant. On or about the latter date, plaintiff drew additional small checks to the amount of $12.50 on defendant bank, which were not paid but dishonored and payment refused. Plaintiff went to the banking house of defendant for the purpose of ascertaining why her checks had been thus dishonored, and was there informed that she had but 25c to her credit. She then learned for the first time that defendant bank had charged to her account checks drawn by her husband, and signed "E. E. Bowers", aggregating $1000.44, which, together with the checks for $104.31 drawn by plaintiff as aforesaid, reduced the plaintiff's credit balance appearing on defendant's books to the sum of 25c. Defendant bank insisted that it was authorized to charge checks drawn by plaintiff's husband, E. E. Bowers, to plaintiff's account. This was denied by plaintiff and this suit was brought by plaintiff to recover of defendant $1000.69 as the balance due on her said deposit account.

Defendant's contention was on the trial below, and is here, that at the time the account of plaintiff was "opened" by the deposit of the check for $850 as aforesaid, defendant was instructed by plaintiff's agent, E. E. Bowers, that the account thus opened in the name of plaintiff would be subject to the checks of either plaintiff or E. E. Bowers. In support of this asserted fact, defendant introduced as a witness J. G. Sanders, who was defendant's "paying and receiving teller" in June 1927, and from whose testimony we quote as follows:

"Q. Do you recall a Mr. E. E. Bowers making a deposit in that bank, in June, 1927? A. Yes, sir.

"Q. I hand you a pass book of the Central National Bank, showing deposits made, the book having been issued to Mrs. E. E. Bettie Bowers, I will ask you to examine that and state whether you wrote those deposits in there yourself? A. Yes, I did.

"Q. It is your handwriting? A. Yes, sir.

"Q. Now, the first deposit there is $850? A. That is right, yes, sir.

"Q. Do you recall how that was made, whether in cash, or by check? A. That deposit was made by a check.

"Q. I hand you a check for $850, made payable to Mrs. E. E. Bettie Bowers, and signed by Joe Sanders, drawn to the Central National Bank, which has been exhibited to the testimony of Mrs. Bowers, and ask you if that is the check that was deposited by Mr. Bowers on June 4, 1927? A. Yes, sir, that is the check.

"Q. Now, I want you to state, please, to the court and jury, what Mr. Bowers told you at the time that check was handed in by him for deposit, what he told you?

"Mr. Estes: I don't know whether that is competent or not; this woman was not present.

"The Court: Well, he was her agent, she sent him there to tell them something, and she couldn't complain. I reckon she expected him to tell the bank something.

"Mr. Estes: What was in my mind, Your Honor, is, he was a limited agent, to deposit this money, and not to make this statement.

"The Court: Of course he might go there and tell how many horse races he bet on, that wouldn't make any difference.

"Mr. Estes: The scope of his authority, I wanted to limit that.

"Mr. Leftwich:

"Q. The check is endorsed by the payee, is it not? A. Yes, sir.

"Q. In blank? A. Yes, sir.

"Q. Now state, what Mr. Bowers told you? A. Mr. Bowers came to my window, and presented this check and said he wanted to open an account under the name of Mrs. E. E. Bowers, and subject to the check of either, so I issued him a pass book and all, under his orders, it was either to be checked on by Mrs. E. E. Bettie Bowers, or himself, E. E. Bowers.

"The Court: Q. Does that pass book state that? A. No, sir, the pass book does not state that; it is Mrs. E. E. Bettie Bowers.

"Mr. Leftwich: Q. But at the time he passed in the check he told you to put it to the credit of Mrs. E. E. Bettie Bowers, and it would be subject to the check of either, either himself or his wife, is that correct? A. That's right.

"Q. Please examine that deposit book and state whether or not Mrs. E. E. Bettie Bowers came in there herself and made any of these deposits that are listed on that book? A. No, sir, those deposits were all made by E. E. Bowers.

"Q. She did not make any of those deposits? A. No, sir.

"Q. Did she make a deposit of $65 in person? A. No, sir.

"The Court: Q. Is there anything on that little book to show who made the deposits. A. No, sir, nothing on the book to show but I remember.

"Q. You just remember that E. E. Bowers made them? A. Yes, sir.

"Mr. Leftwich: Q. Made all of those deposits? A. He was the only one ever made a deposit with me, and they are all made by him, there is just four of them.

"Q. Did you or not pay checks out of that account that were signed by both Mrs. E. E. Bettie Bowers and by E. E. Bowers? A. I paid them signed by both, yes.

"Q. You paid them as they came in, signed by either one of them? A. Yes, sir, that's right."

E. E. Bowers also testified as a witness for defendant as follows:

"Q. Now, getting down to the matters involved in this lawsuit, Mr. Bowers, I will ask you if you made a deposit of $850 with the Central National Bank, in June or, June 4, 1927? A. Yes, sir.

"Q. What was it that you deposited there, was it money or check? A. Check.

"Q. I hand you a check for $850, which has been put in evidence as an exhibit to the plaintiff's testimony, and ask you if that is the check that you deposited there? A. Yes, sir, that is the check.

"Q. Who is it made payable to? A. Mrs. Bowers.

"Q. Now, was it endorsed by her? A. Yes, sir.

"Q. Is that her endorsement on the back of it? A. Yes, sir.

"Q. Was that on there when you got the check? A. Yes, sir.

"Q. Now, please tell the court what you said, if anything to the teller, the receiving teller, down there at the time you handed him this check for the deposit? A. I handed in this check for deposit, and told him that the check was subject, deposited in her name subject to both of our checks, as I was instructed to by her.

"Q. Then that was taken in by the bank, and the bank book of pass book issued? A. Yes, sir.

"Q. Now, is this the bank book, examine it and see if that is the pass book, that was given to you at the time by the bank? A. Yes, sir, this is the book.

"Q. Now, I see there are several other deposits made there. Please turn to the book and state the date of the next deposit on the account. A. Well, on June 8th, there was a deposit made of $40 which was cash money.

"Q. Who made that deposit? A. I did, and on June 22nd, was another $65 cash deposit made.

"Q. Who made that one? A. I did.

"Q. Did your wife make that deposit in person? A. No, sir. And on June 24th, or 25th, I don't know just exactly what this is, I cannot see it good, but there was a $150 deposited check or draft made payable to me.

"Q. Was that your money? A. Yes, sir.

"Q. Did you make that deposit in person? A. Yes, sir.

"Q. I will hand you draft, signed by the Gerard Fire and Marine Insurance Company, for $150 made payable to the order of E. E. Bowers, and ask you if that is the draft that you referred to awhile ago, as having been deposited by you? A. Yes, sir.

"Q. Now, was that draft deposited in bank, and is shown on that pass book that you have just examined? A. Yes, sir.

"Q. Was that your money? A. It was.

"Q. I will ask you if you owed your wife any money A. No, sir.

"Q. At that time? A. No, sir.

"Q. Did you give her this draft, or the proceeds of it, in payment of any debt you owed her? A. No, sir.

"Q. Did you give her the forty dollars that is shown to have been deposited there? A. No, sir.

"Q. Did you give her the sixty-five dollars? A. No, sir.

"Q. That is deposited there? A. No, sir.

"Q. Did your wife make any deposit that is shown on that book personally? A. Not a solitary one.

"Q. You made them all? A. Every one of them."

Defendant also introduced witnesses whose testimony tended to show that plaintiff knew that E. E. Bowers was drawing checks against plaintiff's deposit account in defendant bank; but this was denied by plaintiff.

Plaintiff testified that she did not at any time authorize E. E. Bowers to draw on her deposit account in defendant bank or authorize defendant bank to charge checks of E. E. Bowers to plaintiff's account, and that she did not know that E. E. Bowers had drawn the checks in controversy until after they had been paid by defendant bank and until after her own checks to the amount of $12.50 had been dishonored by the defendant bank as aforesaid.

As before stated, it was necessary for the trial court to submit all disputed questions of fact material to the determinative issues to the jury, and we think the learned trial judge had this requirement in mind, and was endeavoring to give it due recognition, when he directed a verdict for the defendant. This, we think, appears from his statement to the jury, as follows:

"Gentlemen, counsel for the defendant have moved the court to instruct the jury to bring in a verdict in favor of the defendant. And after considerable argument, the court is convinced that that ought to be done, but I think it is fair to the jury to give you a line on why it is done.

"The uncontroverted proof in this case is, that is, the first part of the proof, that while this check belonged to this lady, it was her money for her alone, she endorses it over to her husband, with instructions to go and put it in the bank to her credit, that is what she says. Well, suppose that is true. The other side denies it, that is, her husband comes along and denies it and circumstances would tend to deny it, but just suppose it is true, that she did authorize her husband to take this check and put it to her credit, and suppose as she contends, the husband didn't do it, that he violated her confidence, that he went and put it to his own credit or partly to his own credit. The bank not knowing of those instructions or this secret understanding between the husband and wife, the bank does what the man asks it to do. If the man had asked it to pay him eight hundred and fifty dollars in cash on this check, they would have done it, under the law. So if they would of had to pay him the money there is nothing to keep—If the bank had had to pay the money to Mr. Bowers, right then, there is nothing to keep them from paying it to him tomorrow or the next day on his check. In other words, it is a case where the wife sent her husband as her agent to do a certain thing under certain conditions, and those instructions weren't carried out, according to her theory. And the bank acted on the only instructions that it received and it dealt with this man just like as if you would go there and put in some money as Mr. Taylor, agent or superintendent, or administrator, or otherwise. That is the contract. You put it in there in your name or in anybody else's name you want to, and if they contract with you for you to check it out, that is a contract, and if you check it out they haven't violated any contract. The pass book is no contract, that is a mere memorandum for the purpose of keeping the balances.

"So on the whole, the court has listened patiently to some very able arguments on both sides, but I don't believe it is a case for the jury and I am directing the jury to return a verdict in favor of the defendant. So say you all gentlemen."

We agree with the learned trial judge that if, instead of depositing the check for $850 to the credit of plaintiff, E. E. Bowers had presented the check (endorsed as it was in blank by plaintiff) at the bank and asked for $850 in cash, the bank could have paid the face value of the check in money to him (E. E. Bowers) without incurring

84

any liability whatever to plaintiff, although plaintiff had not authorized E. E. Bowers to "cash" the check, but had directed him to deposit it in the bank to her credit.

But we do not think it follows from this that, having opened the account in the name of plaintiff alone, E. E. Bowers could, without actual authority from plaintiff, bind plaintiff by instructions to the bank that the deposit then made and those which might be made thereafter in the account then opened, were to be subject to checks drawn by him (E. E. Bowers) in his own name as well as checks drawn by plaintiff.

The relation existing between a bank and a depositor being that of debtor and creditor, the bank can justify a payment on the depositor's account only upon the actual direction of the depositor. Seaboard National Bank v. Bank of America, 193 N. Y. 26, 85 N. E. 829, 830; Heath v. New Bedford Safe Deposit & Trust Co., 184 Mass. 481, 69 N. E. 215; 3 R. C. L., pp. 540-541, sec. 170.

"A bank may of course pay checks drawn by a duly authorized agent, but merely giving money to an agent (A) to deposit does not confer any authority upon the agent to withdraw the money; and if the bank has notice that the funds are not the property of A., it will be liable to the principal for paying without his order." 2 Morse on Banks & Banking, 6th Ed., sec. 433.

That one is an agent for the purpose of depositing his principal's money in bank does not give him authority to check it out. Heath v. New Bedford Safe Deposit & Trust Co., supra.

That the $850 check was payable to plaintiff and that the account was being opened, the pass book issued and the credit entered in the name of plaintiff *alone* were facts which would naturally suggest that the deposit belonged to plaintiff, and the fact that the bank was asked to pay checks drawn by one person out of a deposit standing wholly in the name of another person was so irregular and unusual, and so out of line with and contrary to the usual course of business, as that it should have served to put the bank on "sharp inquiry." Water Co. v. Bank, 123 Tenn. 364, 372, 131 S. W. 447.

We are not aware of any adjudged case in this State directly ruling the question of law here presented; but it has been squarely decided in cases from other jurisdictions. The case of Bates v. First National Bank of Brockport, 89 N. Y. 286, is in point. The headnote to the opinion in that case, which contains a brief statement of the facts and the question of law arising thereon, with the decision of the court, is as follows:

"In an action by plaintiff, a married woman, to recover the amount of certain deposits, she proved that she indorsed and delivered to her husband two checks belonging to her, and payable to her order, for the purpose of having the same deposited,

in her name, with the defendant. She then produced a bank book in the usual form, in which the amount of the checks was credited to her as depositor. Defendant offered to show in substance that at the time of the first deposit it was orally agreed between plaintiff's husband and defendant, that the deposit should be made to defendant's credit, on condition that the same might be withdrawn by the husband on check drawn by him in plaintiff's name; that the second deposit was also made under a similar agreement, and that the deposits were subsequently so withdrawn. This was objected to and excluded. Held no error; that the request of the husband to have the deposit made in the name and to the credit of plaintiff, and a pass book issued to her, taken in connection with the checks made payable to her, sufficiently disclosed the agency of the husband; that authority to sign his wife's name to future checks could not be inferred from the fact of his making the deposits; and defendant could not prove an arrangement with him hostile to her interests and beyond the apparent scope of the agency, without proof of actual authority from her.''

We shall not extend this opinion by quotations from the opinion in the case just cited, except to quote the conclusion thereof, as follows:

"The husband's possession of the money did not authorize it (the bank) to infer authority to sign the wife's name to future checks. It relied upon the husband's honesty without inquiry as to the fact, and must take the risks of its reliance. Its pass book was something more than a mere receipt. It imported, besides, a promise to pay on demand, and so had in it elements of contract. The bank made the wife its depositor, whom it was bound to protect against vouchers not known to be actually hers. It established a relation which it was required to respect so long as it existed, and from the duties of which it could not escape without her real authority. It trusted the husband beyond the scope of his apparent authority, and must bear the consequent loss. The evidence offered would not have constituted a defense, and was, therefore, properly excluded.''

The case of Brown v. Daugherty, 120 Fed. 526, is also in point, as will appear from the third headnote to the reported opinion, as follows:

"A husband deposited money which he received from a sale of land owned by his wife, and which, under the law, was her separate property, in a bank in her name; stating to the cashier that he would sign the checks. The bank entered her name as the depositor, and issued a pass book in her name, which the husband showed to his wife. He subsequently drew checks against the deposit, to which he signed her name, and which the bank paid,

until the money was all withdrawn and converted to his own use. The wife had not authorized the deposit; nor did she authorize the drawing of the checks, or know of the same until after the money was all withdrawn. Held, that the legal effect of the transaction of the deposit was to establish, prima-facie, the relation of creditor and debtor between the wife and the bank, and that having accepted her as a depositor, and the money being in fact her property, the bank could not discharge its indebtedness by paying out the money without her authority, but was liable to her, under the facts shown, for the amount of the deposit.''

We concur in the reasoning of the courts and the conclusions reached in the cases of Bates v. Bank and Brown v. Daugherty, supra, and we think the principles announced and applied in those cases are controlling in the instant case.

In their brief, defendant's counsel, after stating much of the evidence in the case, and nearing the close of their brief and argument, say: ''From all of which it may be seen that the court was of the opinion that justice had been met in the case and even though he should be wrong in his propositions of law there would be no reason for reversing this case and remanding it for a new trial as the facts justify the judgment of the court.''

The argument just stated overlooks the rule that where there are conflicts in the evidence with respect to facts that are material and determinative of the issues, the parties have a *constitutional right* to a trial by jury, of which they cannot be deprived by the court. ''There can be no constitutional exercise of the power to direct a verdict in any case where there is a dispute as to any material evidence, or any legal doubt as to the conclusion to be drawn from the whole evidence upon the issues to be tried, but the case must go to the jury.'' Hines v. Partridge, 144 Tenn. 219, 232, 231 S. W. 16.

It results that the assignments of error challenging the action of the trial court in directing a verdict for the defendant are sustained, and the judgment will be reversed and the cause remanded to the Circuit Court of Davidson County for trial. The costs of the appeal will be adjudged against the defendant bank. The costs accrued in the court below will await the further judgment of that court.

Crownover and DeWitt, JJ., concur.